**Pamela SMART, Petitioner,**

v.

**Glenn S. GOORD, Commissioner of the New York State Department of Correctional Services, Respondent.**

**No. 97 Civ. 9034(LAP)(JCF).**

United States District Court,
S.D. New York.

Aug. 19, 1998.

Leslie H. Ben–Zvi, Dienst & Serrins, LLP, New York City, for Petitioner.

Valerie Singleton, Asst. Atty. Gen., New York City, Ann M. Rice, Senior Asst. Atty. Gen., Concord, NH, for Respondent.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

After being convicted in New Hampshire for conspiring to murder her husband, Pamela Smart was transferred to a New York State prison. Ms. Smart then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Southern District of New York, naming the Commissioner of the New York State Department of Correctional Services as respondent. The respondent now moves to dismiss the petition for im-

proper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue to the United States District Court for the District of New Hampshire under 28 U.S.C. § 1404(a). Ms. Smart argues that venue is proper and asks the Court to issue an order allowing her attorneys to conduct videotaped depositions in New Hampshire. For the reasons set forth below, the respondent's motion to transfer venue is granted.

*Background*

A. *Procedural History*

Ms. Smart, the media director for a New Hampshire school district, was accused of inducing her teenage lover to kill her husband. Her trial received national media attention, including coverage by the three major television networks, and inspired a motion picture. Affirmation of Leslie Ben–Zvi, dated April 17, 1998 ("Ben–Zvi Aff.") ¶¶ 50, 54.

On March 22, 1991, a New Hampshire jury convicted her of being an accomplice to first-degree murder, conspiring to commit murder, and tampering with a witness. *State v. Smart,* 136 N.H. 639, 643–46, 622 A.2d 1197, 1200–02 (1993). The New Hampshire Supreme Court upheld the convictions. *Id.* at 669, 622 A.2d at 1216. Ms. Smart received a mandatory life sentence without possibility of parole. Ben–Zvi Aff. ¶ 3. Because New Hampshire lacks adequate facilities to house a female inmate for a life term, Ms. Smart was transferred to the Bedford Hills Correctional Facility in New York State pursuant to an interstate agreement. Ben–Zvi Aff. ¶¶ 3, 9. She has been incarcerated in New York for approximately seven years. Ben–Zvi Aff. ¶ 9.

On April 21, 1997, Ms. Smart filed an application for state habeas corpus relief in Rockingham County Superior Court in New Hampshire. Petition for Writ of Habeas Corpus ("State Pet."), attached to Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet.Mem."); Pet. ¶ 11; Ben–Zvi Aff. ¶ 5. First, Ms. Smart argued that Judge Douglas Gray, who presided over her trial, violated her Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and her rights under Part 1, Article 15 of the New Hampshire Constitution by communicating with jurors three times when neither she nor her counsel was present. State Pet. ¶ 3. Two of these communications consisted of *in camera,* on-the-record meetings between the judge and two different jurors with respect to possible juror misconduct. *Smart v. Brodeur,* 97–E–157 (Superior Ct., Rockingham County, June 13, 1997), attached as Exhibit P to Pet. Mem., at 2. In the third instance, the judge informed the jurors that they would be sequestered. *Smart v. Brodeur,* 97–E–157 at 2; Ben–Zvi Aff. ¶ 4 n. 1. Ms. Smart asserted that this threat of sequestration influenced some jurors to vote for conviction. *Smart v. Brodeur,* 97–E–157 at 2; Ben–Zvi Aff. ¶ 4 n. 1.

In addition, Ms. Smart asserted four other claims in her state habeas corpus petition. She alleged that Judge Gray violated her Fifth and Sixth Amendment rights by breaching his "affirmative duty to investigate co-defendants' intentional subversion of the truth finding process and contempt for the proceedings." State Pet. ¶ 4. She further asserted that the prosecution failed to disclose exculpatory material as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). State Pet. ¶ 5. Ms. Smart also claimed that she was denied due process and a fair trial as a result of extensive pretrial publicity, the court's failure to postpone the trial and the court's refusal to change venue. State Pet. ¶ 6. Finally, she contended that her mandatory life sentence without possibility of parole was cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Part 1, Article 18 of the New Hampshire Constitution. State Pet. ¶ 7.

An evidentiary hearing was held before Judge Gray, who refused Ms. Smart's request that he recuse himself. Ben–Zvi Aff. ¶ 5; Respondent's Reply Memorandum in Further Support of Motion to Dismiss or, in the Alternative, Transfer ("Reply Mem.") ¶ 10. Judge Gray denied the petition on June 13, 1997. *Smart v. Brodeur,* 97–E–157 at 5; Pet. ¶ 11(4)—(6).

On December 8, 1997, Ms. Smart submitted this federal habeas corpus petition in the Southern District of New York, asserting the same five claims raised in her state habeas corpus petition. Pet. ¶ 12. The respondent then filed the instant venue motion.

### B. Interstate Corrections Compact

Ms. Smart was relocated to New York pursuant to the Interstate Corrections Compact (the "ICC"). The ICC establishes a framework for the reciprocal use of prison space by states to effect economies in capital expenditures and operational expenses. New York and New Hampshire have adopted the ICC. *See* N.H.Rev.Stat. Ann. § 622–B:2 (1997); N.Y. Correct. Law §§ 100–109 (1987). Pursuant to the ICC, these two states have executed a contract authorizing the incarceration of one state's prisoners in the other's prisons. Contract Between the State of New Hampshire and the State of New York for the Implementation of the Interstate Corrections Compact ("Contract"), attached as Exhibit B to Ben–Zvi Aff.

The Contract and the ICC establish the rights and duties of the states sending and receiving prisoners. The receiving state acts as the agent for the sending state. N.H.Rev. Stat. Ann. § 622–B:2 Art. IV(a); N.Y. Correct. Law § 104(a). Transferred prisoners are at all times subject to the jurisdiction of the sending state, which may retake its inmates on demand. N.H.Rev.Stat. Ann. § 622–B:2 Art. IV(c); N.Y. Correct. Law § 104(c); Contract ¶ 25. Transferred prisoners must be given all legal rights they would have received if confined in the sending state. N.H.Rev.Stat. Ann. § 622–B:2 Art. IV(e); N.Y. Correct. Law § 104(e). However, they are also subject to all laws and regulations applicable to persons convicted by the receiving state that are not inconsistent with their sentences. Contract ¶ 17. In the event of a conflict of law, the sending state's law governs. Contract ¶ 2. Any decision of the sending state on a matter over which it retains jurisdiction is final and not reviewable by the receiving state. N.H.Rev.Stat. Ann. § 622–B:2 Art. V(a); N.Y. Correct. Law § 105(a). Finally, the receiving state must provide regular reports so an inmate's status may be reviewed according to the sending state's laws. N.H.Rev.Stat. Ann. § 622–B:2 Art. IV(d); N.Y. Correct. Law § 104(d).

### Discussion

### A. Motion to Transfer Venue

#### 1. Change of Venue in Habeas Corpus Proceedings

In civil cases, venue may be changed pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Habeas corpus cases are civil in nature and are embraced by the term "any civil action." *U.S. ex rel. Meadows v. State of New York*, 426 F.2d 1176, 1183 n. 9 (2d Cir.1970). Thus, § 1404(a) is applicable to habeas corpus proceedings.

#### 2. Proper Forum

The respondent's motion to transfer may only be granted if this action "might have been brought" in New Hampshire. While subject matter jurisdiction clearly exists, the issues of personal jurisdiction and venue are more complex.

##### a. Personal Jurisdiction [1]

Section 2241(a) of Title 28 U.S.C. provides that "[w]rits of habeas corpus may be granted by ... the district courts ... within their respective jurisdictions." 28 U.S.C. § 2241(a). Prior to the Supreme Court's decision in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the phrase "within their respective jurisdictions" was in-

---

**1.** Ms. Smart refers to 28 U.S.C. § 2241(d), which states that the districts of sentencing and confinement have concurrent jurisdiction to decide a habeas corpus petition "made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts." 28 U.S.C. 2241(d) (1994); Ben–Zvi Aff. ¶ 13. However, section 2241(d) only "applies when the prisoner is confined in the state in which he was convicted and sentenced." *That is not the case here.*

terpreted as restricting habeas jurisdiction to the judicial district where the prisoner was physically in custody. *Ahrens v. Clark*, 335 U.S. 188, 190–93, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); *Meadows*, 426 F.2d at 1180. However, in *Braden* the Court interpreted § 2241(a) as requiring "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Braden*, 410 U.S. at 495, 93 S.Ct. 1123; *see Wang v. Reno*, 862 F.Supp. 801, 812 (E.D.N.Y.1994). It is now clear that a federal habeas corpus petition may be brought in any court with jurisdiction over the prisoner or her custodian. *Fest v. Bartee*, 804 F.2d 559, 560 (9th Cir.1986).

■ The question here is whether New Hampshire may be considered Ms. Smart's "custodian" for habeas corpus purposes even though she is incarcerated in New York. Absent other considerations, the custodian is the person with "day to day control over the petitioner . . . who can actually 'produce the body.'" *Wang*, 862 F.Supp. at 812; *see also Ex parte Endo*, 323 U.S. 283, 306, 65 S.Ct. 208, 89 L.Ed. 243 (1944) (writ is directed to petitioner's "jailer"); *Guerra v. Meese*, 786 F.2d 414, 416 (D.C.Cir.1986).

However, the concept of "custodian" is a flexible one. *Wang*, 862 F.Supp. at 812. Although the New York correctional authorities have day-to-day control over Ms. Smart, New Hampshire is considered her "true custodian" because New York acts solely as New Hampshire's agent in incarcerating her, N.H.Rev.Stat. Ann. § 622–B:2 Art. IV(a), N.Y. Correct. Law 104(a), and because it is the New Hampshire conviction that is being challenged. *See Balboa v. Sizer*, 899 F.Supp. 186, 188 (S.D.N.Y.1995) (where petitioner was incarcerated in federal prison in New York at direction of United States Marshal for Middle District of Pennsylvania, Marshal was "true custodian" and New York warden acted as his agent); *Fest*, 804 F.2d at 560 (petitioner convicted in Nebraska but incarcerated in Nevada pursuant to ICC was in Nebraska's custody for purposes of challenge

to Nebraska conviction); *see also Dunne v. Henman*, 875 F.2d 244, 248 (9th Cir.1989) ("Under . . . *Braden*, the 'true custodian' is the official in the state whose indictment or conviction is being challenged.").

Ms. Smart argues that respondent Goord's custodial power supersedes that of any New Hampshire official because he has "all [the] responsibility" for her actual custody. Ben–Zvi Aff. ¶¶ 15–16. This contention is misplaced. New York's authority is contingent on that of New Hampshire, which may change Ms. Smart's place of incarceration at any time. N.H.Rev.Stat. Ann. § 622–B:2 Art. IV(c); N.Y. Correct. Law § 104(c). Further, New York does not have "all" the responsibility for Ms. Smart's actual custody. For example, New York may not remove Ms. Smart from the facility without an order from New Hampshire; it must obtain New Hampshire's authorization before incurring expenses for Ms. Smart's non-emergency medical, dental, or psychiatric services; and it may not subject her to disciplinary measures which, although legal in New York, are prohibited by New Hampshire law. Contract ¶¶ 14(a), 16, 19. Also, all requests for information regarding Ms. Smart must be forwarded to New Hampshire. Contract ¶ 26.

■ Thus, either the appropriate New Hampshire official or the agent-custodian in New York would be a proper respondent in this action. *See Park v. Thompson*, 356 F.Supp. 783, 786 (D.Haw.1973); *see also Braden*, 410 U.S. at 499 n. 15, 93 S.Ct. 1123 ("Nothing in this opinion should be taken to preclude the exercise of concurrent habeas corpus jurisdiction over the petitioner's claim by a federal district court in the district of confinement."); *Wilkins v. Erickson*, 484 F.2d 969, 970–71 (8th Cir.1973). Accordingly, personal jurisdiction may be asserted in the District of New Hampshire over the appropriate official of that state's Department of Corrections, who may be substituted as the respondent.[2] *Braden*, 410 U.S. at 495, 93

---

**2.** Ms. Smart asserts that New Hampshire lacks jurisdiction over Commissioner Goord, the only named respondent. Ben–Zvi Aff. ¶¶ 2a, 19. However, the District of New Hampshire does not need personal jurisdiction over respondent

Goord. It is sufficient that that court have personal jurisdiction over the New Hampshire official. Commissioner Goord, in his agency capacity, must carry out any order directed to the New

S.Ct. 1123; *see also Wilkins,* 484 F.2d at 973 (Montana prisoner incarcerated in South Dakota pursuant to the Western Interstate Corrections Compact could have brought habeas corpus petition challenging Montana conviction in District of Montana since South Dakota was acting only as agent for Montana in caring for petitioner); *Fest,* 804 F.2d at 560 (habeas petition more properly brought in sending state than receiving state); *Evans v. Wolff,* 427 F.Supp. 400, 400 (D.Mont.1977) (habeas petition properly transferred from district court in receiving state to one in sending state); *Park,* 356 F.Supp. at 785–87.

### b. *Venue*

■ Pursuant to the general venue statute, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). The events giving rise to Ms. Smart's habeas claims occurred in the District of New Hampshire, as she asserts that her constitutional rights were violated during her trial and sentencing there. Therefore, venue is proper in the District of New Hampshire under 28 U.S.C. § 1391(b)(2).

The District of New Hampshire has subject matter jurisdiction over this action and personal jurisdiction over New Hampshire corrections officials, and venue is proper there. Accordingly, the action may be transferred pursuant to 28 U.S.C. § 1404(a) if a change of venue would serve the interests of convenience and justice.

### 3. *Convenience Analysis*

■ A district court has broad discretion in determining whether or not to transfer. *In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2d Cir.1992). However, the moving party has the burden of demonstrating the desirability of transfer, *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989), and must make a "clear-cut showing" that

Hampshire official. N.H.Rev.Stat. Ann. § 622–B:2 Art. IV(a); N.Y. Correct. Law § 104(a).

transfer is in the best interests of the litigation. *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207, 217 (S.D.N.Y.1995); *Schieffelin & Co. v. Jack Co.,* 725 F.Supp. 1314, 1321 (S.D.N.Y.1989).

■ In making this decision, the court weighs a number of competing facts including: (1) the plaintiff's choice of forum, (2) the locus of the operative facts, (3) the convenience and relative means of the parties, (4) the convenience of witnesses, (5) the availability of process to compel the attendance of witnesses, (6) the location of physical evidence, including documents, (7) the relative familiarity of the courts with the applicable law, and (8) the interests of justice, including the interest of trial efficiency.[3] *See id.* at 215–16; *Frasca v. Yaw,* 787 F.Supp. 327, 330–33 (E.D.N.Y.1992).

### a. *Petitioner's Choice of Forum*

■ A court must give significant consideration to a plaintiff's choice of venue, not disturbing it unless other factors weigh strongly in favor of transfer. *See In re Warrick,* 70 F.3d 736, 741 (2d Cir.1995); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 96 (S.D.N.Y.1995). In this case, of course, this factor favors retaining the action in the Southern District of New York where Ms. Smart filed her petition. However, when the operative events occurred elsewhere, the plaintiff's choice of forum is given less weight. *See 800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 134 (S.D.N.Y.1994); *In re Eastern District Repetitive Stress Injury Litigation,* 850 F.Supp. 188, 194 (E.D.N.Y.1994) ("when a plaintiff's chosen forum has no connection to the events which gave rise to the claim for relief, plaintiff's choice of forum is a less weighty consideration"); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990 (E.D.N.Y.1991); *Morales v. Navieras de Puerto Rico,* 713 F.Supp. 711, 712–13 (S.D.N.Y.1989).

**3.** Some other factors, such as contractual choice of forum clauses or the enforceability of a judgment, are irrelevant here.

### b. *Locus of Operative Events*

The location of the operative events is a "primary factor" in determining a § 1404(a) motion to transfer. *800–Flowers, Inc.*, 860 F.Supp. at 134; *Morales*, 713 F.Supp. at 712. Here, Ms. Smart claims that her constitutional rights were violated because Judge Gray had ex parte communications with the jury, failed to investigate her co-defendants' "subversion of the truth finding process," and failed to limit trial publicity; because the prosecutor failed to disclose exculpatory material; and because her sentence constitutes cruel and unusual punishment.

All of these alleged violations took place in New Hampshire. Judge Gray's conduct of the trial and the prosecutor's participation in it unquestionably occurred there. In addition, Ms. Smart's Eighth Amendment claim arose in New Hampshire because she challenges the legitimacy of her conviction and sentence as opposed to the conditions of her confinement. No events on which Ms. Smart's petition is based occurred in New York.[4] This factor therefore favors transfer.

### c. *Convenience of the Parties*

Ms. Smart argues that because New Hampshire does not have adequate correctional facilities to house a female inmate for a life term, there is "no correctional facility in which she can be housed during the potentially lengthy pre-hearing process, much less the full hearing itself." Ben–Zvi Aff. ¶ 2(d). The respondent asserts that no hearing will be necessary to resolve this petition. Reply Mem. ¶ 7. If the district court chooses to hold a hearing,[5] there is nothing to indicate that Ms. Smart could not be housed in New Hampshire temporarily as she was for the hearing on her state habeas corpus petition. Reply Mem. ¶ 10. The parties have made no other arguments with respect to this factor. Therefore, the convenience of the parties is not a significant factor in the analysis.

### d. *Convenience of Witnesses*

The convenience of witnesses is an important consideration in the determination of venue. *In re Eastern Dist. Repetitive Stress Injury Litigation*, 850 F.Supp. at 194; *Hernandez*, 761 F.Supp. at 990. A party seeking transfer on account of witness convenience must normally "specify the key witnesses to be called and ... make a general statement of ... their testimony," *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978) (citations omitted); *Coker v. Bank of America*, 984 F.Supp. 757, 765 (S.D.N.Y.1997), and the respondent has failed to do so here. Nevertheless, both sides agree that any potential witnesses reside in New Hampshire. Affirmation of Anne Rice in Support of Motion to Dismiss Petition for Writ of Habeas Corpus for Improper Venue dated Feb. 20, 1998 ("Rice Aff.") ¶ 4 ("the witnesses that may have information pertinent to the Petitioner's claims are located in New Hampshire"); Ben–Zvi Aff. ¶ 52 (jurors from state trial, "all of whom are local residents of this small community [in New Hampshire]," may be called as witnesses). Therefore, the convenience of witnesses supports transfer.

### e. *Ability to Compel Witness Testimony*

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a subpoena requiring the

---

**4.** Ms. Smart suggests that New York is a site of operative events because she feels the effects of the alleged constitutional violations while incarcerated here. Ben–Zvi Aff. ¶¶ 32–33 (citing *French Transit, Ltd. v. Modern Coupon Systems Inc.*, 858 F.Supp. 22, 26 (S.D.N.Y.1994)). In *French Transit*, a trademark infringement case, the court held that, in determining the location of events giving rise to the claim, it could consider where the effects of the alleged infringement might be felt because the locus of the actionable wrong was both where the allegedly infringing labels were affixed and where consumers were likely to be confused. *Id.* at 25. This rationale turns on substantive trademark law and does not apply here.

**5.** The district court has discretion to hold an evidentiary hearing even where one is not mandatory. *Townsend v. Sain*, 372 U.S. 293, 312, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled in part by Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), *and* the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1217 (April 24, 1996), codified at 28 U.S.C. § 2254(e)(2) (1996); *Pagan v. Keane*, 984 F.2d 61, 64 (2d Cir.1993); *Dey v. Scully*, 952 F.Supp. 957, 964 (E.D.N.Y.1997).

attendance of a witness at a hearing may be served at any location within the district in which the hearing is being held, or at any place "within 100 miles of the place of the . . . hearing." Fed.R.Civ.P. 45(b)(2). All potential witnesses, aside from Ms. Smart, are located in New Hampshire. Rice Aff. ¶ 4; Ben–Zvi Aff. ¶ 52. As New Hampshire is more than 100 miles from the courthouse where any hearing would be held if the action remained in this district, these witnesses are beyond this Court's subpoena power. While it is be possible to introduce at a hearing the depositions of witnesses who cannot be compelled to testify in person—perhaps taken by videotape, as suggested by Ms. Smart—such a procedure is a poor substitute for live testimony. *See Eastern District Repetitive Stress Injury Litigation,* 850 F.Supp. at 194 ("[d]epositions, however, even when videotaped, are no substitute for live testimony"). Thus, this factor also favors transfer.

### f. *Location of Physical Evidence*

■ The record in this case is located in New Hampshire and consists of approximately twenty-seven volumes of transcript. Rice Aff. ¶ 4; Reply Mem. ¶ 6. However, the "comparatively low cost of transporting documents" makes their location a less pressing factor in deciding a venue motion, *Pennwalt Corp. v. Purex Industries, Inc.,* 659 F.Supp. 287, 290 (D.Del.1986), and there is no other physical evidence relevant to Ms. Smart's petition. This consideration therefore weighs only slightly in favor of transfer.

### g. *Familiarity with the Governing Law*

The respondent asserts that the District of New Hampshire is most familiar with the application of New Hampshire's criminal laws and procedural rules. Rice Aff. ¶ 4. While federal courts are limited to redressing violations of federal law, 28 U.S.C. § 2254(a), it is true that the District of New Hampshire is more conversant with the state criminal procedures involved in the underlying case. This expertise may assist that court in deciding the federal habeas corpus issues presented here. Therefore, this factor also supports transfer. *See Fest,* 804 F.2d at 560 (federal habeas petition more properly brought in sending state of Nebraska in part because "[t]he law and procedures at issue are those of Nebraska").

### h. *Interest of Justice*

■ Ms. Smart's case was the subject of over 1,200 newspaper and magazine articles and national television reporting. Ben–Zvi Aff. ¶ 50. Live coverage of the trial was furnished by a local television station. Ben–Zvi Aff. ¶ 50. Ms. Smart argues that if there is a habeas corpus hearing in New Hampshire, the juror-witnesses will be in the media spotlight and "may be intimidated to the point where they are uncomfortable to even speak to Petitioner's attorneys." Ben–Zvi Aff. ¶ 52. Further, Ms. Smart argues that the ultimate relief she seeks—a new trial with new jurors—"will be compromised by the highly charged, highly publicized atmosphere of a federal habeas corpus hearing in New Hampshire" because the smaller jury pool in New Hampshire would be "easily influenced." Ben–Zvi Aff. ¶¶ 53–54.

■ "Adverse publicity is certainly a factor which a court may consider in determining the propriety of transfer pursuant to § 1404." *City of New York v. General Motors Corp.,* 357 F.Supp. 327, 328 (S.D.N.Y. 1973); *see also Haase v. Gilboy,* 246 F.Supp. 594, 595–96 (E.D.Wis.1965). However, even if a hearing is held and is subject to substantial publicity, such attention would not likely affect the decision in this habeas corpus proceeding, which is made by a judge, not a jury. Ms. Smart's further assertions about potential witness intimidation and the influence on jurors who would preside at a new trial are too speculative to merit weight in this analysis.

■ In sum, the locus of operative events strongly favors transfer, along with, to a lesser extent, the convenience of witnesses, the ability to compel witness testimony, the location of physical evidence, and familiarity with the governing law. These factors overcome the petitioner's choice of forum, which is entitled to less weight because no operative events occurred in New York. A change of venue is therefore warranted. The two

other courts that have addressed this issue in the context of the ICC have come to the same conclusion: a federal habeas corpus claim is better heard in the state where the petitioner was convicted. *Wilkins*, 484 F.2d at 972 ("Montana, the state of conviction and sentencing, is the most convenient forum because of the availability of witnesses and records. It is a Montana judgment that is under attack, and Montana's Attorney General, not South Dakota's, must defend it."); *Fest*, 804 F.2d at 560 ("The appellees are the State of Nebraska and the members of the Nebraska Board of Parole. The law and procedures at issue are those of Nebraska. The appellant is more properly considered to be in the custody of Nebraska. The petition should be brought in Nebraska.").[6]

## B. *Motion to Dismiss for Improper Venue*

■ The respondent also moves to dismiss the petition for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Because the application to transfer is granted, this motion need not be addressed. Even if venue were improper, a transfer to a proper forum would be preferable to dismissal. *See* 28 U.S.C. § 1406(a) (where venue is initially improper, district court may "dismiss, or . . . transfer such case to any district or division in which it could have been brought"); *Metropa Co., Ltd. v. Choi*, 458 F.Supp. 1052, 1055–56 (S.D.N.Y. 1978) ("Courts will generally transfer [cases with improper venue] when it is clear wherein proper venue would be laid.") (citing cases).

**6.** Ms. Smart nevertheless contends that "[t]he clear and unequivocal actions of New Hampshire herein indicate a waiver of venue". Ben–Zvi Aff. ¶ 35 (emphasis omitted). Waiver of objection to improper venue only pertains to a motion to dismiss or transfer on the basis of improper venue pursuant to 28 U.S.C. § 1406(a), not to a motion to transfer for convenience and the interest of justice pursuant to 28 U.S.C. § 1404(a). *Hirsch v. Zavaras*, 920 F.Supp. 148, 150 (D.Colo. 1996); *Katz v. Lear Siegler, Inc.*, 86 Civ. 0536E, 1994 WL 520951, at *1 (W.D.N.Y. Sept. 7, 1994), *aff'd*, 86 F.3d 1173 (Fed.Cir.1996) (defendant's waiver of right to challenge venue did not preclude it from making § 1404(a) motion); *Ferment–Acid Corp. v. Miles Laboratories, Inc.*, 153

### C. *Order for Videotaped Depositions*

Ms. Smart asks the Court to issue an order allowing her attorneys to conduct videotaped depositions of witnesses in New Hampshire. Because the motion to transfer is granted, this request is denied as moot.

### *Conclusion*

For the reasons set forth above, the respondent's motion to transfer venue to the District of New Hampshire is granted, and the Clerk of Court shall effect the transfer.

SO ORDERED.

F.Supp. 19, 20 (S.D.N.Y.1957) (defendant's waiver of right to challenge venue does not foreclose § 1404(a) transfer). As this motion is decided on the basis of § 1404(a), which permits a transfer even where the initial venue was proper, Ms. Smart's waiver argument need not be addressed.

Alternatively, Ms. Smart's contention could be construed as an equitable argument that, because the respondent transported her to New York against her will, it should be precluded from arguing for a § 1404(a) transfer back to the more convenient forum. However, the fact that Ms. Smart is not in this district voluntarily has already been incorporated in the § 1404(a) analysis in considering her choice of forum, the location of the parties, and the interest of justice.