ZPC 2000, INC., a South Carolina corporation, on behalf of itself and in the name and right of SCA ZPC Solutions, L.L.C. Plaintiff,

v.

THE SCA GROUP, INC. and George R. Stout, Defendants.

No. 99 CIV. 8986(NRB).

United States District Court, S.D. New York.

Feb. 14, 2000.

---

Edward F. Westfield, New York City, for Plaintiff.

## OPINION AND ORDER

BUCHWALD, District Judge.

Plaintiff ZPC 2000, Inc. ("ZPC") brings this action against defendant SCA Group, Inc. ("SCA") and its principal shareholder; George R. Stout ("Stout"), alleging various causes of action, including misappropriation of trade secrets, breach of contract, and four causes of action under the Illinois Limited Liability Company Act, 805 Ill. Comp. Stat. §§ 180/15–3(b), 15–3(d), 15–20, and 40–15. Defendants move to dismiss the complaint for lack of personal jurisdiction and for improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), and 28 U.S.C. § 1406. In the alternative, defendants move for transfer of venue to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404.[1] Plaintiff opposes each of these motions and, in the alternative, moves for transfer to the District of South Carolina under § 1404.[2] For the reasons set forth below, defendants' motion is granted to the extent that the action is transferred to the United States District Court for the Northern District of Illinois in the interest of justice. In all other respects, both sides' motions are otherwise denied.

## BACKGROUND

According to plaintiff's complaint, both ZPC and SCA are consulting companies that entered into discussions in late 1997 or early 1998 to determine if they "could join forces to offer information technology services."[3] Comp. ¶ 9.[4] Plaintiff alleges that in order to facilitate these preliminary discussions, both sides entered into an "Exchange of Confidentiality and Proprietary Information and Non Disclosure Agreement" (the "NDA"). However, defendants dispute ever having entered into such an agreement (see Aff. of Stout of Sept. 20, 1999, attached to defendants' September 21, 1999 Notice of Motion, ¶ 13), and plaintiff has been unable to produce a signed and dated copy (see NDA, attached to plaintiff's October 28, 1999 Notice of Cross Motion as "Exhibit D").[5] The name printed on the alleged agreement to sign on behalf of SCA is that of R.J. Bartholomew, a South Carolina "representative" of SCA who only later acquired an interest in SCA ZPC Solutions. Comp. ¶¶ 9, 17; Pl. Mem. at 21.

Plaintiff alleges that pursuant to the agreement, ZPC disclosed to SCA its proprietary "$O^2R^2$ methodology," which "enables a user to compile computer source code" and therefore more effectively maintain, analyze and translate computer programs. Comp. ¶¶ 13–14. "Soon after," SCA and ZPC agreed to enter into a formal business relationship and, indeed, formed a limited liability company named SCA ZPC Solutions, L.L.C. under the laws and procedures of the State of Illinois in February of 1998. Comp. ¶¶ 15–16. However, by May of 1998, the relationship between the principals of SCA and ZPC began to deteriorate, culminating in a serious dispute over financing around mid-March of 1999. See, generally, Comp. ¶¶ 22–26.

---

1. Defendant's briefs in support of its motions will be hereinafter cited as "Pl. Mem." and "Pl. Reply."

2. Plaintiff's briefs opposing defendants' motions and in support of its own alternative motion will hereinafter be cited as "Def. Mem." and "Def. Reply."

3. Where a motion to dismiss is addressed on pleadings and affidavits alone, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor. *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

4. "Comp." refers to plaintiff's complaint dated August 16, 1999 and filed August 18, 1999.

5. Hereinafter cited as "NDA."

However, ZPC's principal, Zoltan P. Ceross ("Ceross"), continued to solicit business for the joint venture through this entire period. *See* Letter from Ceross to George H. Levine of March 5, 1999, attached to plaintiff's Notice of Cross Motion as "Exhibit F." In May of 1999, though, Stout directed Ceross to cease contact with any of the company's clients and to return all company credit cards and property. Comp. ¶ 28. On behalf of ZPC, Ceross instituted this action on August 18, 1999, seeking damages for defendants' allegedly wrongful acts.

## DISCUSSION

District courts have broad discretion in formulating the appropriate procedures to be followed in deciding a motion to dismiss for lack of personal jurisdiction and venue. *See Credit Lyonnais Securities (USA), Inc. v. Alcantara,* 183 F.3d 151, 153 (2d Cir.1999); *Baby Boom Gifts, Inc. v. Luv N' Care, Ltd.,* No. 98 Civ. 8615, 1999 WL 825609, at *1 (S.D.N.Y. Oct. 15, 1999). Although some courts have held that a federal court must have subject matter jurisdiction before issuing an order to transfer venue, there is no similar requirement for personal jurisdiction. *Garrel v. NYLCare Health Plans, Inc.,* 1999 WL 459925 at *7 (S.D.N.Y. June 29, 1999). As a result, we need not decide defendants' personal jurisdiction motion because, even assuming arguendo that we were to find that this Court has no personal jurisdiction over the defendants, we could still order the case to be transferred to a more convenient forum in the interests of justice under either § 1404 or § 1406. *See Stein v. Microelectronic Packaging, Inc.,* 1999 WL 540443, at *7 (S.D.N.Y. July 26, 1999); *Garrel,* 1999 WL 459925 at *7; *Malone v. Commonwealth Edison Co.,* 2 F.Supp.2d 545, 547 (S.D.N.Y. 1998). We therefore proceed to the analysis of the parties' competing motions with respect to venue.[6]

**A. § 1406—Improper Venue**

Defendants argue in the first instance that this case should be dismissed as having been brought in an improper venue. *See* Fed.R.Civ.P. 12(b)(3). Section 1406(a) of Title 28 of the United States Code provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Section 1391(a) of Title 28, the federal venue statute, in turn provides three bases for venue in cases such as this one, where this Court's subject matter jurisdiction "is founded only on a diversity of citizenship." The first two bases do not apply to this case since both sides essentially concede (1) that defendant Stout does not reside in New York (Comp.¶ 3), and (2) that no "substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York. 28 U.S.C. § 1391(a). As a result, the determination of whether venue in this district is proper must be governed by § 1391(a)(3), which provides for venue in a "judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may be otherwise brought."

Once an objection to venue has been raised, the plaintiff bears the burden of establishing that venue is proper. *Fine Foods International L.P. v. North America Fine Foods Inc.,* No. 99 Civ. 1062, 1999 WL 1288681, at *4 (S.D.N.Y. Nov. 12 1999) (citing *D'Anton Jos, S.L. v. Doll Factory, Inc.,* 937 F.Supp. 320, 321 (S.D.N.Y.1996)). Since we assume personal jurisdiction solely for the purpose of this venue determination, to establish that venue lies here, ZPC must demonstrate that under 28 U.S.C. § 1391(a)(3) "there is no [other] district in

---

**6.** Inasmuch as personal jurisdiction is a prerequisite to venue, it will be hereinafter assumed, but only for the purposes of our discussion of venue.

which the action may be otherwise brought."

▮ Plaintiff has attempted to meet this burden by pointing to the forum selection provision of the Non Disclosure Agreement that it allegedly entered into with SCA. Comp. ¶ 10. According to Paragraph 9 of the unsigned version of the NDA produced by plaintiff, the parties had agreed that, "[t]he Court of New York [sic] shall be competent in the first instance to decide on any disputes between the parties with regard to this agreement." NDA ¶ 9. However, there are strong reasons to believe that this provision does not control the forum selection of this action.

First, without a "clear finding" that both parties consented to the NDA's forum selection provision, it would be "premature" for a court to find venue where it would not otherwise lie. *See Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (2d Cir.1998). Plaintiff's failure to produce a signed copy of the NDA and SCA's refusal to acknowledge that they signed it raise grave doubts as to its applicability. ZPC "is a corporation organized and existing" in South Carolina (Comp.¶ 1), and defendants are residents of Illinois (Comp.¶¶ 2–3). It is certainly not readily understandable why SCA would have consented to commit itself to a New York forum.

Second, even if we were to find the clause binding, the NDA would appear to have become inoperative under its own terms. Plaintiff alleges that the agreement was entered "[i]n connection with [the parties'] preliminary discussions." Comp. ¶ 10. *See also* NDA ¶ 2.2 ("The Receiving party shall use the Proprietary Information that the other disclosed *solely for the purpose of exploring the possibility to co-operate* [sic] in relation with … the O²R² and Cosmos services….") (emphasis added). It is quite another matter to say that the NDA controls the terms of the parties' subsequent fully-consummated decision to found and incorporate SCA ZPC Solutions. The NDA provides that it

"shall not apply to information that … is approved for release or use by written authorisation [sic] of the disclosing party." NDA ¶ 5. It is not tenable that SCA ZPC Solutions would have been created had the articles of incorporation for the company not constituted such "written authorization." As such, the terms by which SCA ZPC Solutions was created should control the determination of this action, not the alleged pre-existing NDA.

Third, the forum selection clause does not specify New York as the exclusive forum. *See Savin v. CSX Corp.*, 657 F.Supp. 1210, 1215 (S.D.N.Y.1987) ("[F]orum selection clauses will be read as limiting venue to a single district only where the language of the clause explicitly mandates such exclusive venue."); *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462, 1465 (S.D.N.Y.1983) (transferring an action despite a forum selection clause which "empower[ed] the New York courts to adjudicate this matter [but did not] indicate that New York [was] the exclusive or the only appropriate forum where the case may be heard"). The NDA's "Forum Choice" provision refers obliquely to the "Court of New York" and does not distinguish between state and federal courts, or between districts within the state. NDA ¶ 9. Moreover, the provision merely provides that the court "shall be competent in the first instance." This is not the explicit mandate of exclusive venue required in this district.

Fourth, the vast weight of the claims at issue in this case, eight of the nine, are brought under Illinois law to vindicate injuries that allegedly occurred as the result of defendants' violations of contractual and common law duties arising from the formation of an Illinois corporation. These non-NDA claims are not automatically controlled by the forum selection clause. *See New Moon Shipping Co. v. Man B & W Diesel A.G.*, 121 F.3d 24, 33 (2d Cir.1997) (remanding a case to a district court to determine whether the forum selection clause in one disputed contract controlled

tort claims and claims brought pursuant to other contracts). At its heart, this is a suit about the dissolution of that Illinois corporation, not about the agreement that governed the discussions that preceded the corporation's creation. Under these circumstances, plaintiff's claims did not arise "with regard to" the NDA, but with regard to the Illinois corporation that was created subsequently. *See, e.g. Armco Inc. v. North Atlantic Insurance Co.,* 68 F.Supp.2d 330, 338–40 (S.D.N.Y.1999) (finding a forum selection clause inapplicable where the " 'gist' of plaintiffs' claims" did not "arise out of" the contract with the clause).

Finally, there is no indication that defendant Stout in any way consented to either venue or personal jurisdiction in the Southern District of New York for the purposes of any suit against him in his personal capacity. His name does not appear anywhere on plaintiff's proffered NDA. The only name that does appear on the NDA on behalf of SCA (although not as a signature) is that of Bartholomew, who operated out of South Carolina. *See* Pl. Mem. at 21.[7]

Given these concerns, we can make no "clear finding" that defendants intended to be bound to the NDA's forum selection clause, much less that it determines the forum for this lawsuit. As a result, we can find no reason that this suit could not be brought in another district, making venue here improper under § 1391.

### B. § 1404—Transfer of Venue

■ Even if we were to find that the NDA's forum selection clause provides a basis for venue to be laid in the Southern District of New York, we would still find that a transfer to the Northern District of Illinois is appropriate as in the best "interests of justice" under § 1404. Section

1404(a) provides that "[f]or the convenience of the parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." The purpose of 1404(a) is to "prevent waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26–27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

While we normally would give full weight to a forum selection clause, the factors by which a court must evaluate the "interests of justice" so overwhelmingly favor transfer (see *infra* ) as to make this case one of the rare exceptions in which a forum selection clause would not control. *See APA Excelsior III L.P. v. Premiere Technologies, Inc.,* 49 F.Supp.2d 664, 671–72 (S.D.N.Y.1999) (reciting a long line of cases in support of the proposition that "even if the Court were to find the forum selection clause to be operative in the current dispute, the Court would still retain the discretion to transfer the action in the interest of justice"). *See also Maltz v. Union Carbide Chemicals & Plastics Co.,* 992 F.Supp. 286, 295–96 (S.D.N.Y.1998) (citing a line of case for the proposition that transfers made pursuant to a forum selection clause are controlled by § 1404(a)).

### C. Interest of Justice Analysis

■ Among the factors a court should consider in determining a question of venue are: (1) the place where the operative facts took place; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant docu-

---

7. Plaintiff argues that Stout is nonetheless bound by the NDA as a successor to SCA ZPC Solutions. Pl. Mem. at 12–14. However, the outcome of this complex question is not necessary to the result we have reached. We

raise the point only inasmuch as it makes it harder for plaintiff to meet its burden of showing that "there is no [other] district in which the action may be otherwise brought."

ments and the relative ease of sources of proof; (5) the forum's familiarity with the governing law the weight accorded; (6) the availability of process to compel unwilling witnesses; and (7) the plaintiff's choice of forum.[8] *JVC Professional Products Co. v. HT Electronics, Inc.*, No. 99 Civ. 3425, 1999 WL 1080280, at * 1 (S.D.N.Y. Dec. 1, 1999); *Fine Foods*, 1999 WL 1288681, at *5. Based on our analysis of these factors, we find that defendants have made a "clear-cut showing" that transfer to the Northern District of Illinois is in the best interest of justice. *See, e.g., Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1321 (S.D.N.Y.1989).

First, the location of operative events is a "primary factor" in determining a motion to transfer venue. *Smart v. Goord*, 21 F.Supp.2d 309, 316 (S.D.N.Y.1998). Here, plaintiff alleges that both defendants are residents of Illinois (Comp.¶¶ 2–3), that Ceross met with the defendants in Chicago (Comp.¶ 15), that the joint company was formed and operated in Illinois (Comp. ¶¶ 16, 22), that it was SCA's Illinois attorney who organized it (Comp.¶ 20), and that the company used an Illinois accountant (Comp.¶ 24). Consequently, any misappropriation of the company's assets or other violations most likely occurred in Illinois. Nowhere in plaintiff's pleadings, briefs, or supporting affidavits does it point to any significant events that took place in New York. Plaintiff argues that "a substantial part" occurred in South Carolina, specifically the injury to plaintiff, but does not contest the fact that the "greater part of the events occurred elsewhere." Pl. Reply at 4–5. *See also* Pl. Mem. at 24. Taking notice of these facts, the "center of gravity" is undoubtedly in Illinois. *See, e.g., Stein*, 1999 WL 540443, at *7. *See also Wechsler v. Macke International Trade, Inc.*, No. 99 Civ. 5725, 1999 WL 1261251, at *4 (S.D.N.Y. Dec. 27, 1999); *Smart*, 21 F.Supp.2d at 316.

Second, the convenience of both the parties and witnesses also favors a transfer of venue to Illinois. As for witnesses, defendants have named six who reside in Illinois plus Stout himself, who can testify to the actions of the Illinois corporations involved in this suit. *See* Aff. of Stout of Nov. 20, 1999, attached to Declaration of James M. Moschella of Nov. 23, 1999. Plaintiff, on the other hand, has named three potential South Carolina witnesses: Ceross, his wife, and Bartholomew. Pl. Mem. at 21–22. Bartholomew, though, is defendant's agent and his location cannot be counted against defendant. That leaves only the consideration for the convenience of Mr. and Mrs. Ceross. Since none of the parties reside in New York, it is only logical that a transfer to the residence of one of them would be more convenient. Plaintiff argues that Mr. and Mrs. Ceross find New York more convenient because of "the presence of friends and relatives in the New York area." *Id.* However, the location of plaintiff's friends and relatives cannot outweigh the actual residence of one of the parties. And since defendants' allegedly wrongful activity occurred in Illinois, the seven witnesses there are clearly central to the outcome of the case. As a result, the balance of convenience of the parties and the witnesses favors Illinois.

Similarly, we also find that the location of relevant documents, the relative ease of sources of proof, and the forum's familiarity with the governing law all favor transfer to Illinois. For the same reason that most witnesses are found in Illinois, the relevant documents and other sources of proof are likely to be among the records of the Illinois corporation at the heart of this suit. Additionally, the complaint makes it clear that this suit is brought pursuant to

**8.** Although § 1404 and § 1406 apply under slightly different circumstances, they employ the same "interests of justice" analysis. *See* 28 U.S.C. §§ 1404(a), 1406(a); *Malone*, 2 F.Supp.2d at 547–48. Consequently, whether we were to find that venue were mislaid in the Southern District of New York under § 1406 or merely more convenient in another district under § 1404, we would use the same factors to determine whether the Northern District of Illinois or the District of South Carolina would provide the preferable venue.

causes of action under Illinois law. Even if, as plaintiff maintains, the tort claims may fall under the aegis of South Carolina law following a conflict analysis, the fact remains that the majority are governed by the law of the state under which SCA ZPC Solutions was incorporated.

Finally, a plaintiff's choice of forum is generally entitled to "substantial consideration." *In re Warrick*, 70 F.3d 736, 741 (2d Cir.1995). "However, when a plaintiff brings a suit … in a forum that has no material connection with the action, this factor should be given little weight." *Wechsler*, 1999 WL 1261251, at *9 (quoting *Brown v. Dow Corning Corp.*, No. 93 Civ. 5510, 1996 WL 257614, at *3 (S.D.N.Y. May 15, 1996)). This is particularly true "when a plaintiff brings suit outside his home forum." *Id. See also Coker v. Bank of America*, 984 F.Supp. 757, 766 (S.D.N.Y. 1997) ("[P]laintiff's choice of the New York forum also is entitled to lesser weight because [plaintiff] has chosen a forum that is not his residence."). As we have discussed above, both sides essentially concede that New York has no material connection to the suit, and plaintiff brought the suit initially outside its home forum in South Carolina. As a result, plaintiff's choice of forum is entitled to little deference.

### CONCLUSION

For the foregoing reasons, the Clerk of the Court is hereby directed to promptly transfer this action in its entirety to the United States District Court for the Northern District of Illinois.

**IT IS SO ORDERED.**