**BANK OF AMERICA, N.A. a national banking association, Plaintiff,**

v.

**HENSLEY PROPERTIES, LP, a limited partnership, Defendant.**

**No. 06 CV 13355(VM).**

United States District Court, S.D. New York.

July 17, 2007.

---

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Bank of America, N.A. ("BoA") brought this case against defendant Hensley Properties, LP ("Hensley") for breach of contract. Hensley responded with counterclaims for fraud and breach of duty. BoA moves to dismiss Hensley's counterclaims pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the Court finds that transfer of this case to the Eastern District of California is appropriate.

## I. BACKGROUND

The events that give rise to this action relate to business dealings between Hensley and BoA that occurred in California. Hensley was owned by Marjorie Bright until her death in 2005, at which time management of the company passed to her daughter-in-law, Cheryl Bright ("Bright").

In June, 2006, Hensley learned that Bank of the West ("BoW") was threatening to accelerate a pre-existing $26 million mortgage loan on three Hensley properties, all of which are located in California. In July and August of 2006, Bright met with representatives from BoA's Modesto, California branch to explore the possibility of obtaining a mortgage loan that would replace the BoW mortgage and be secured by the same three properties.

At these meetings, all of which took place in Modesto, California, BoA provided information to Hensley regarding a proposed refinancing transaction, which would include a variable-rate mortgage and an interest rate swap. BoA also allegedly told Bright that it could offer Hensley a "60 day forward rate lock." BoA presented Bright with a number of documents related to this transaction, including an overview of interest rate swaps (see "Interest Rate Hedging Discussion," attached as Ex. B. to Certification of Steven Shiffman, dated February 1, 2007) and a summary of terms and conditions (see "Proposed Interest Rate Swap (Forward Rate Lock)," attached as Ex. 1 to Answer and Counterclaims). Bright signed both of these documents on August 11, 2006. Bright subsequently signed a document that purports to confirm the terms and conditions of the transaction entered into by Hensley and BoA on August 11, 2006 (the "Confirmation"). (See Confirmation, attached as Ex. A to BoA's Complaint.)

Hensley alleges that it subsequently learned that BoW had decided not to accelerate the BoW mortgage, and it informed BoA that it was no longer interested in procuring a replacement mortgage. BoA responded that Hensley was still committed to the agreement the parties had reached with respect to the interest rate swap, even in the absence of a BoA mortgage.

BoA alleges that Hensley failed to make its first payment under the agreement, and it brought this action for breach of contract. Hensley counterclaims that BoA committed fraud by making material misstatements and omissions with the intent to induce Hensley to enter into the interest rate swap agreement. Specifically, Hensley claims that BoA misrepresented the transaction as simply a "forward rate lock," whereas in reality it was an "onerous and speculative interest rate swap." (Answer and Counterclaims ¶ 33.) Hensley alleges that, as a result of BoA's misrepresentations, when Bright agreed to the interest rate swap, she believed she was merely ensuring that the interest rate for any mortgage agreement she might later enter into with BoA would be frozen at its present value.

Hensley also claims that BoA breached its "duty of care," its "duty of good faith and fair dealing," and its "duty not to foist an unsuitable and onerous transaction such as an interest rate swap on a customer whose only interest was to discuss a real estate mortgage." (Id. ¶ 38.)

## II. DISCUSSION

### A. FORUM SELECTION CLAUSE

The Confirmation, signed by both parties and dated August 14, 2006, states that it "evidences a complete binding agreement between the parties as to the terms of the Transaction to which [it] relates." (Confirmation at 1.) The Confirmation refers to an "ISDA Master Agreement," (the "Master Agreement") which is a standardized form contract published by the International Swaps and Derivatives Association, Inc. See Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 328 (2d Cir.2005). The Confirmation states:

> [T]he parties agree to use all reasonable efforts promptly to negotiate, execute,

and deliver an agreement in the form of an ISDA Master Agreement, which such modifications as the parties will in good faith agree. Upon execution by the parties of such an agreement, this Confirmation will supplement, form a part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation except as expressly modified below. Until the parties execute and deliver that agreement, this Confirmation ... shall supplement, form a part of, and be subject to an agreement in the form of ... the 2002 ISDA Master Agreement as if the parties had executed an agreement in such form....

(*Id.*) Section 13(b) of the Master Agreement provides that each party submits to the non-exclusive jurisdiction of the courts of either England or New York, depending on whether the transaction at issue is to be governed by English law or the laws of New York. In this case, the Confirmation indicates that the agreement is governed by New York law.

## B. *ENFORCEABILITY*

■ "A forum selection clause is enforceable unless it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it." *New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997) (*citing M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). Under the circumstances of this case, the Court finds that enforcement of the forum-selection clause would be "unreasonable and unjust."

■ Hensley alleges, and BoA does not dispute, that when Bright signed the Confirmation, neither she nor any other representative of Hensley had been provided with a copy of the Master Agreement. Hensley also alleges that it was not given any other notice of the fact that the Master Agreement contained a forum-selection clause. According to Hensley, BoA did not send a copy of the Master Agreement to Hensley until October 13, 2006, nearly two months after the Confirmation was signed. That Master Agreement was not executed by Hensley.

In *Carnival Cruise Lines v. Shute,* a seminal case on the issue of enforceability of forum-selection clauses, the Supreme Court emphasized "that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The Court ultimately held that the clause at issue should be enforced, in part because "the respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity." *Id.* In *Carnival,* notice of the forum-selection clause was given on the face of the cruise ship ticket. *See id.* at 587, 111 S.Ct. 1522.

In *Seneca Ins. Co. v. Henrietta Oil Co.,* a recent case in this District, the defendant Henrietta Oil Co. ("HOC") completed and signed an insurance application form that had been provided by Seneca. *See* Docket No. 02 Civ. 3535, 2003 WL 255317, at *1 (S.D.N.Y. Feb.4, 2003). More than two months later, Seneca sent HOC a copy of the insurance policy, which included a forum-selection clause. *See id.* On HOC's motion to dismiss for lack of personal jurisdiction, the court held that it would be unjust to enforce the forum-selection clause because the clause was not contained in the application form signed by HOC and because HOC had no relevant contacts with New York and therefore could not reasonably anticipate being haled into court there. *See id.* at *3. HOC was a Texas corporation, operating exclusively in

Texas, that sought insurance from a Texas insurance broker. *See id.*

Similarly, in the present case, the forum-selection clause was not included in the Confirmation that was signed by Bright, and Hensley could not have reasonably anticipated that by signing the Confirmation it was consenting to be haled into court in New York. Hensley is a limited partnership, organized under the laws of Delaware and doing business in California. BoA is a national banking association with its principal place of business in North Carolina. All discussions and meetings pertaining to the underlying transaction took place in California, either at Hensley's offices or a local branch office of BoA in Modesto, California. Moreover, the transactions related to the financing of properties located in California. Other than the fact that Bank of America does business nationally, therefore, neither the parties nor the events and transactions at issue have any connection with New York. In light of all these circumstances, enforcement of the forum-selection clause against Hensley would be unreasonable and unjust.

## C. *VENUE*

■ BoA asserts that venue is also proper in this District pursuant to 28 U.S.C. § 1391, subsection (a)(2), which states that a civil action may be brought in a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." However, BoA has not pointed to a single event or omission giving rise to its breach of contract claim that took place in this District, and it is undisputed that the properties to which the parties' transactions related are not located in this District. Accordingly, this argument must be rejected.

## D. *PERSONAL JURISDICTION*

■ The Court's personal jurisdiction over Hensley is based on its alleged consent made pursuant to the forum-selection clause, which the Court has found to be unenforceable. Because Hensley objected to the Court's jurisdiction over its person in its responsive pleading, it has not waived this defense. *See* Fed.R.Civ.P. 12(h)(1). Additionally, neither Hensley nor the transactions or events from which this dispute arise have any connection with New York. Accordingly, there is no basis upon which the Court may assert personal jurisdiction over Hensley. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124–30 (2d Cir. 2002).

## E. *TRANSFER OF VENUE*

■ A district court has the power pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) to transfer venue even if it lacks personal jurisdiction over the defendant, and whether or not venue is proper, if a transfer would be in the interest of justice. *See Fort Knox Music Inc. v. Baptiste,* 257 F.3d 108, 111–12 (2d Cir.2001) (*citing Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)); *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 80 (2d Cir.1978).

Because the Court finds that the forum-selection clause here is unenforceable and that the requirements of 28 U.S.C. § 1391(a)(2) are not met, venue is not proper in this District and the Court lacks personal jurisdiction over Hensley. Accordingly, the Court may transfer this case "to any district or division in which it could have been brought," if doing so would be "in the interest of justice." 28 U.S.C. § 1406.

Alternatively, even if the forum-selection clause were enforceable, the Court could transfer this case "[f]or the convenience of

440

parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In *Stewart Org., Inc. v. Ricoh Corp.,* the Supreme Court held that in making this determination, a forum-selection clause is not dispositive, but rather is simply "a significant factor" that is to be weighed along with "a number of case-specific factors." 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *see also Red Bull Assoc. v. Best Western Int'l, Inc.,* 862 F.2d 963, 967 (2d Cir.1988) ("Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'") (*quoting Stewart,* 487 U.S. at 29, 108 S.Ct. 2239).

■■ In assessing whether transfer of an action is warranted pursuant to 28 U.S.C. § 1404(a) or § 1406(a), courts are guided by several factors, including "(1) the convenience of witnesses; (2) the convenience of parties; (3) the location of relevant documents and the ease of access to those sources of proof; (4) the center of the operative events at issue; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice." *Zepherin v. Greyhound Lines Inc.,* 415 F.Supp.2d 409, 411 (S.D.N.Y.2006); *see also ZPC 2000, Inc. v. SCA Group, Inc.,* 86 F.Supp.2d 274, 278–79 (S.D.N.Y.2000). "The location of operative events is a 'primary factor' in determining a motion to transfer venue." *ZPC 2000,* 86 F.Supp.2d at 279. In this case, as discussed above, all of the operative events took place in California, and it is therefore likely that most of the witnesses and documents are located there. The Court would lack power to compel the attendance of any unwilling witnesses. Additionally, it is likely

that even if this Court were to assert jurisdiction over this case, Hensley's tort counterclaims would be governed by California law. *See Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 335 (2d Cir.2005).

The totality of the circumstances, analyzed pursuant to either 28 U.S.C. § 1404(a) or § 1406(a), weigh compellingly in favor of conducting this litigation in the Eastern District of California. Accordingly, the Court concludes that transfer of the action is warranted.

### III.  *ORDER*

For the reasons discussed above, it is hereby.

**ORDERED** that the Clerk of Court is directed to transfer this action to the Eastern District of California pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

The Clerk of Court is directed to close this case.

**SO ORDERED.**