**APA EXCELSIOR III L.P., Apa Excelsior III Offshore L.P., Apa/Fostin Pennsylvania Venture Capital Fund, Cin Venture Nominees Limited, Stuart A. Epstein, and David Epstein, Plaintiffs,**

**v.**

**PREMIERE TECHNOLOGIES, INC., Boland T. Jones, Patrick G. Jones, George W. Baker, Sr., Eduard J. Mayer, and Raymond H. Pirtle, Jr., Defendants.**

**No. 98 Civ. 7926 AGS.**

United States District Court, S.D. New York.

May 19, 1999.

Melvyn I. Weiss, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, for plaintiffs.

John E. Chapoton, Jr., Cunningham, Darlow, Zook & Chapoton, LLP, Houston, Texas, for defendant Eduard J. Mayer.

Evan K. Kornrich, Fulbright & Jaworski, New York City, for defendant Eduard J. Mayer.

Todd R. David, John A. Jordak, Jr., Alston & Bird LLP, Atlanta, Georgia, for defendants Premiere Technologies, Inc., Boland T. Jones, Patrick G. Jones, George W. Baker, Sr. and Raymond H. Pirtle, Jr.

Scott A. Edelman, Milbank, Tweed, Hadley & McCloy, New York City, for defendants Premiere Technologies, Inc.,

Boland T. Jones, Patrick G. Jones, George W. Baker, Sr. and Raymond H. Pirtle, Jr.

*OPINION AND ORDER*

SCHWARTZ, District Judge.

This action arises out of a merger between Premiere Technologies, Inc. ("Premiere") and Xpedite Systems, Inc. ("Xpedite"). Pursuant to a merger agreement, Premiere purchased all of the outstanding stock of Xpedite, and Xpedite shareholders received newly-issued Premiere stock in return. Plaintiffs, major shareholders in Xpedite at the time of the Premiere/Xpedite merger, initiated the present action against defendants after the Premiere stock that they had received drastically decreased in value. Plaintiffs allege violations of federal securities laws, negligent misrepresentation, and breach of contract.

Defendants move the Court to transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendants' motion to transfer the action is GRANTED. The Court declines to rule on Defendants' motion to dismiss.

***FACTUAL BACKGROUND***

Xpedite, prior to its merger with Premiere, was based in New Jersey and was a "leading provider of enhanced fax services ... and discounted international fax services." (Plaintiffs' Memorandum of Law in Opposition to Motion to Transfer ("Pl. Mem.") at 2.) Premiere was a provider of integrated communications services. *Id.* Premiere became interested in a merger with Xpedite in 1997 and eventually offered to purchase Xpedite with newly-issued Premiere stock that would be, based on Premiere's value at that time, valued at $34 per share of Xpedite stock. *Id.* Prior to the execution of a merger agreement between Xpedite, Premiere, and Premiere's acquisition subsidiary (the "Merger Agreement"),[1] Defendants insisted that Plaintiffs sign certain stockholder agreements (the "Stockholder Agreements").[2] Plaintiffs signed the Stockholder Agreements on November 13, 1997, and the Merger Agreement was executed on the same date. (Pl.Mem. at 2.)

Section 10.14 of the Merger Agreement provides that the parties to the Agreement consent to jurisdiction in the Southern District of New York, and will not attempt to defeat or deny that jurisdiction by motion or otherwise. Merger Agreement § 10.14. The Stockholder Agreements contain a venue provision requiring the parties to submit to the jurisdiction of the Court of Chancery in the State of Delaware. (Stockholder Agreements § 6.11(b).) Neither party contends that this action should have proceeded in Delaware, and in the instant motion plaintiffs rely exclusively upon the venue provision of the Merger Agreement. (Pl.Mem. at 4.)

On or about January 28, 1998, Premiere filed a Form S-4 Registration Statement and Prospectus (the "January Prospectus") with the Securities and Exchange Commission for the issuance of Premiere Common stock to Xpedite shareholders pursuant to the terms of the Merger Agreement. The January Prospectus did not make any projections or predictions with respect to future financial performance. (Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def.Mot.Dis.Mem.") at 5.) Xpedite's shareholders approved the Premiere merger on February 27, 1998. (Complaint ¶ 64.)

1. (Defendants' Motion to Transfer, Exhibit 4, Agreement of Plan and Merger by and among Premiere Technologies, Inc., NETS Acquisition Corp. and Xpedite Systems, Inc., dated as of November 13, 1997 ("Merger Agreement" or "Agreement").)

2. (Defendants' Motion to Dismiss, Exhibit B, Stockholder Agreement ("Stockholder Agreements").)

On June 10, 1998, Premiere announced that it was experiencing various difficulties with its business and was expecting to report an after-tax loss for the quarter ending June 30, 1998. (Complaint ¶ 69.) On that date, and in response to this announcement, Premiere's stock fell twenty-eight percent, from $14.4375 per share to $10.375 per share. (Complaint ¶ 71.) Within four months after the approval of the Merger Agreement, the total value of Premiere stock exchanged for plaintiffs' 30% of Xpedite decreased in value from $87 million to $27 million. (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss (Pl.Mot.Dis.Mem.) at 9.)

Plaintiffs subsequently filed the instant action, alleging that, in connection with their conduct during the negotiation, execution, and approval of the Merger Agreement, Defendants are liable to them for (1) violations of §§ 11, 12(2), and 15 of the Securities Act, codified as 15 U.S.C. §§ 77k, 77*l*(a)(2), and 77*o*; (2) negligent misrepresentation; and (3) breach of contract.

Twenty-two related actions have been filed against Defendants in the Northern District of Georgia. (Defendants' Motion to Transfer, Exhibits 1, 2.) These actions were filed five months before the current action (the "New York Action") and have been consolidated before the Honorable Judge Owen Forrester.[3] *Id.* A proposed sub-class in the Consolidated Atlanta Action expressly includes former shareholders of Xpedite. *Id.* Additionally, a former Xpedite shareholder is a proposed class representative. *Id.* Plaintiffs in the Consolidated Atlanta Action allege non-disclosure and misrepresentation with respect to many of the same facts complained of by plaintiffs in this action. The first Amended Consolidated Class Action Complaint attached plaintiffs' complaint (the "New York Complaint") as an exhibit and stated that several of its allegations were derived from it. (Defendants' Motion to Transfer, Exhibit 3, at 45). The Second Amended Consolidated Class Action Complaint (the "Atlanta Complaint"),[4] filed in the Consolidated Atlanta Action on February 5, 1999, continues to reference the New York Complaint. (Atlanta Complaint ¶ 105 n. 1).

### *DISCUSSION*

28 U.S.C. § 1404(a) ("§ 1404(a)") provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to avoid "waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal citations omitted). A district court maintains broad discretion in deciding whether to transfer a case "in the interest of justice." *See Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513 (2d Cir.1989). The moving party, however, bears the "burden of making out a strong case for transfer." *Id.* at 521 (internal citations omitted).

Factors that are relevant to a determination of whether a § 1404(a) transfer motion should be granted are: "(1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice." *Brown v. Dow Corning Corp.,* No. 93 Civ. 5510(AGS), 1996 WL 257614, *2 (S.D.N.Y. May 15, 1996) (citing *Viacom Int'l, Inc. v.*

3. The Court will refer to the actions filed in the Northern District of Georgia as the "Atlanta Actions" or the "Consolidated Atlanta Action."

4. (Defendants' Motion to Transfer, Exhibit 5–A.)

*Melvin Simon Prods., Inc.*, 774 F.Supp. 858, 867–68 (S.D.N.Y.1991) (citations omitted)). Other key considerations are the existence of a forum selection clause, *see Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), and the pendency of related actions in the transferee district, *see, e.g., Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F.Supp. 1241, 1243 (S.D.N.Y. 1982).[5]

The overriding consideration in this case is the existence of twenty-two previously-filed and now consolidated actions in the Northern District of Georgia. Although a forum selection clause existed in the Merger Agreement between Premiere and Xpedite, the Court concludes that either this clause is not binding or its importance is outweighed by the substantial interest of justice in transferring the action.

### *I. The Pendency of the Atlanta Actions in the Northern District of Georgia*

#### *A. Importance of Related Actions*

It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer. *See, e.g., Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 164 (S.D.N.Y. July 13, 1992); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 743 F.Supp. 260, 263 (S.D.N.Y. 1990) ("The presence of related litigation in the transferee forum weighs heavily in favor of transfer...."); *Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y.1988) ("Transfer is particularly appropriate where there is a pending lawsuit in the transferee district involving the same facts, transactions, or occurrences.") (citations omitted) (footnote omitted). The existence of twenty-two related actions further strengthens the importance of this factor.

In *Savin v. CSX Corporation*, 657 F.Supp. 1210, 1214 (S.D.N.Y.1987), Judge Walker explained that the "interests of justice" element of § 1404(a) includes considerations of judicial economy. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Savin*, 657 F.Supp. at 1214 (citing *Wyndham Associates v. Bintliff*, 398 F.2d 614, 619 (2d Cir.1968)). In *Savin*, this reasoning was persuasive enough even to outweigh an otherwise binding forum selection clause. *See Savin*, 657 F.Supp. at 1214.

#### *B. Similarity of Actions.*

The plaintiffs in the Consolidated Atlanta Action allege similar misrepresentations as those alleged by plaintiffs in the present action. Both groups of plaintiffs allege that the Registration Statement and Prospectus filed by Defendants on January 28, 1998 ("January Prospectus") was materially misleading. For example, Paragraph 52 of the New York Complaint, and ¶¶ 103 and 73 in the Atlanta Complaint allege that the January Prospectus inaccurately portrayed Premiere's prior acquisition of Voice–Tel Enterprises ("Voice–Tel") and failed to disclose material information relating to Voice–Tel. The Complaints[6] both allege that the following material facts were undisclosed: (1) Premiere's efforts to integrate and consolidate its acqui-

5. Additionally, in order to grant a motion to transfer pursuant to § 1404(a), a district court must find that the action could have been brought in the transferee court in the first instance. *See Dahl v. HEM Pharm. Corp.*, 867 F.Supp. 194, 195 (S.D.N.Y.1994); 28 U.S.C. § 1404(a). Neither party disputes that this action could have been brought in the Northern District of Georgia. Premiere maintains its headquarters in Atlanta, and the other requirements for proper venue are plainly satisfied. *See* 28 U.S.C. § 1391(b); 15 U.S.C. § 77v.

6. The Court will refer to the New York Complaint and the Atlanta Complaint together as "The Complaints" or "Both Complaints."

sition of Voice–Tel were ineffective; (2) Premiere lacked an effective management plan or staff with which to integrate Voice–Tel in part because of its virtual elimination of the original Voice–Tel staff; (3) Voice–Tel was experiencing a large-scale loss of sales staff and customers; and (4) Premiere's ineffective management was destroying Voice–Tel's ability to provide its customers with quality services.

This Action and the Atlanta Action also involve similar allegations that Defendants, in the January Prospectus, misrepresented and failed to disclose material facts with respect to Premiere's acquisition of Voice–Com Holdings, Inc. ("Voice–Com"). (Complaint ¶ 54; Atlanta Complaint ¶ 105.) Both Complaints allege that Premiere's integration of Voice–Com was ineffective and had the effect of weakening the company. *Id.* Plaintiffs in this action and the plaintiffs in the Consolidated Atlanta Action also both allege various misrepresentations in the January Prospectus with respect to the progress and success of Premiere's product "Orchestrate." In particular, both groups allege that statements in the January Prospectus caused them to believe, falsely, that Orchestrate was operational and could be successfully released during early 1998. (Complaint ¶ 56; Atlanta Complaint ¶¶ 107, 73(g) –(j).)

This action and the Atlanta Action both allege similar misrepresentations in the January Prospectus with respect to Premiere's relationship with customers Amway Corporation and Digitec 2000, Inc. (Complaint ¶ 59; Atlanta Complaint ¶ 110.) Both Complaints also extensively discuss the lack of experienced management at Premiere and its ineffective internal controls.

A variety of identical legal issues will need to be decided in both the current Action and the Atlanta Action. For example, Defendants in both actions will likely contend that (1) the alleged misrepresentations are immaterial in light of the total mix of information available to plaintiffs, (2) plaintiffs' claims are barred under *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), (3) plaintiffs have no standing to assert their claims, and (4) plaintiffs' misrepresentation allegations do not state a claim under the securities laws under *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). (Def.'s Mem. at 4.)

Plaintiffs respond that the two actions have significant differences. They contend that The New York Action is limited to the *transactional process that culminated in* the Xpedite/Premiere merger. Therefore, while the Atlanta Actions involve a period of sixteen months, the New York Action involves only the four month period of time dating from the merger negotiations until the final approval of the merger by Xpedite shareholders. Plaintiffs also point out that the Atlanta Complaint, unlike the New York Complaint, asserts claims arising under the Securities and Exchange Act, §§ 10(b), 20(a), and 14(a), which require proof of scienter. Plaintiffs further note that each action has distinct elements which are completely irrelevant to the other: the New York Action by major Xpedite shareholders will involve reference to the Stockholder Agreements that plaintiffs contend Defendants improperly induced them to sign, and the Atlanta Action will involve complicated issues of class certification.

The Court concludes, nevertheless, that this Action and the Consolidated Atlanta Action are extremely similar and that a transfer will further the interests of justice. *See, e.g., Dahl v. HEM Pharm. Corp.,* 867 F.Supp. 194, 194–96 (S.D.N.Y. 1994) (ordering transfer when related action in transferee court pled different cause of action). "[T]he issue is not whether identical causes of action have been pled in the two actions but whether they 'hinge upon the same factual nuclei.'" *Id.* at 197 (citing *Berg v. First Am. Bankshares, Inc.,* 576 F.Supp. 1239, 1243 (S.D.N.Y.1983)).

In effect, plaintiffs in this action allege an important subset of the claims asserted in the Consolidated Atlanta Action, with substantial overlap,[7] and with minor additions that mostly center on the Stockholder Agreements and the breach of contract claim. These minor differences, however, do not alter the facts that both actions hinge on the same core of operative facts and that a transfer will serve the interests of judicial economy and fairness by avoiding duplicative litigation and the possibility of inconsistent rulings. *See River Road Int'l, L.P. v. Josephthal Lyon & Ross, Inc.*, 871 F.Supp. 210, 211 (S.D.N.Y.1995) (transferring a securities action to a district where a related class action was pending, even though the class action had subclasses, named two additional defendants, and asserted some different securities claims); *Steinhardt Partners v. Smith Barney, Harris Upham & Co., Inc.*, 716 F.Supp. 93, 95 (S.D.N.Y.1989) (stating, in a private action alleging securities law violations and common law fraud, that "[u]nder these circumstances ... 'the interest of justice' requires this Court to place great weight on the fact that a related class action is pending in the Northern District of California.")

*American Alliance Ins. Co. v. Sunbeam Corp.*,[8] relied upon by plaintiffs, does not alter this result. Plaintiffs cite *American Alliance* as evidence that a suit based on contractual obligations should not necessarily be transferred merely because similar securities claims are pending in the transferee court. In *American Alliance*, the insurance company plaintiff, American Alliance Insurance Co. ("AAI"), sought a declaratory judgment that it was not obligated to issue to the defendant, Sunbeam Corp. ("Sunbeam"), $10 million in excess liability coverage for Sunbeam's directors and officers ("D & O"). *Id.* at *1, *2. AAI had previously offered Sunbeam such a policy, but asserted that it was not required to issue the policy

> first, because the offer expired by its terms ... as a result of Sunbeam's failure to provide the information on which the offer was expressly conditioned, and second, because [the required] Warranty Letter [submitted by Sunbeam] was false in its representation that no Sunbeam officer or director had information concerning any conduct likely to give rise to D & O claims against them.

*Id.* at *2. Judge McKenna denied a motion to transfer the action to the court where securities actions against Sunbeam were pending. *Id.*

The action in *American Alliance* was "essentially a contract dispute regarding AAI's obligation to issue a D & O policy to Sunbeam, not a fraud suit alleging violations of the federal securities laws." *Id.* at *4. The contract in *American Alliance* did not provide for the sale of any securities. The question was solely what the correct interpretation of AAI's offer was, and whether AAI was required to issue insurance to Sunbeam. *Id.* Here, by contrast, the contractual claim is between a buyer and seller of securities. Plaintiffs are alleging fraud and breach of contract in connection with a Merger Agreement that resulted in the issuance and transfer of securities to effect the merger of two corporations. Additionally, as discussed in the previous section, plaintiffs' contract claim is based, to a large extent, on pre-

7. The Atlanta Complaint makes it clear that the issues with respect to the January Prospectus are very similar to the issues relating to other statements upon which the plaintiffs in the Consolidated Atlanta Action rely. Paragraph 103 of the Atlanta Complaint, in explaining why the January Prospectus was misleading, refers to the reasons stated in ¶ 73, which explained why previous statements by defendants were misleading. This strongly suggests that, notwithstanding the fact that the Atlanta Action involves additional press releases and statements that occurred over a longer period of time, the facts underlying plaintiffs' allegations are substantially similar to those underlying those of the Atlanta Plaintiffs.

8. No. 98 Civ. 4703(LMM), 1999 WL 38183 (S.D.N.Y. Jan. 28, 1999).

cisely the same "allegations of fraudulent conduct" as the claims in the Atlanta Action. Further, plaintiffs have added Securities Act claims that are virtually identical to many of those asserted in the Atlanta Action. The result is that, while a transfer may have not been appropriate in *American Alliance,* the interest of justice clearly warrants a transfer in this case.

*II. The Forum Selection Clause*

The Merger Agreement between Xpedite and Premiere provides that:

> Each of the parties hereto:
>
> (a) consents to submit itself to the personal jurisdiction of (i) the United States District Court for the Southern District of New York in the event any dispute arises out of the Agreement or any of the transactions contemplated by this Agreement to the extent such court would have subject matter jurisdiction with respect to such dispute and (ii) the Chancery or other courts of the State of Delaware or otherwise; [and]
>
> (b) agrees that it will not attempt to deny or defeat such personal jurisdiction or venue by motion or other request for leave from any such court....

(Merger Agreement § 10.14.)

The forum selection clause is not dispositive in the present action. First, it is unclear whether Plaintiffs are able to invoke the forum selection clause against defendants. None of the plaintiffs was a party to the Merger Agreement and only one defendant was—Premiere itself. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 725 F.Supp. 712, 733 (S.D.N.Y.1989) (refusing to permit shareholders to take advantage of contractual provisions in a merger agreement between their corporation and another). *See also Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1295–96 (3rd Cir.1996). Although the stockholder plaintiffs and Individual Defendants may have been involved in negotiating the Merger Agreement, only Premiere, Xpedite, and Premiere's acquisition subsidiary were signatories to it. The Merger Agreement contains language specifying that non-parties may not take advantage of its terms:

> This Agreement shall be binding upon and inure solely to the benefit of each party hereto and nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.....

Merger Agreement § 10.10. *See In re Gulf Oil/Cities,* 725 F.Supp. at 732–33 (stating that the language of the contract is a key consideration in evaluating whether a contract creates third party beneficiaries who may take advantage of contractual provisions). The forum selection clause expressly states that it applies to "[e]ach of the parties hereto." Merger Agreement § 10.14.[9]

Second, even if the Court were to find the forum selection clause to be operative in the current dispute, the Court would still retain the discretion to transfer the action in the interest of justice. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (stating that forum selection clause is only "a significant factor" in a § 1404(a) analysis); *Credit Alliance Corp. v. Crook,* 567 F.Supp. 1462, 1464 (S.D.N.Y.1983) (finding that the existence of a forum selection clause generally "does not prevent the court from ordering a change of venue under § 1404(a)"); *Savin v. CSX Corporation,* 657 F.Supp. 1210, 1213–1214 (S.D.N.Y.1987). *Cf. also Heller Financial, Inc. v. Midwhey Powder Co. Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989) ("a valid forum-

9. We also note that the Stockholder Agreements specify Delaware, not New York, as the appropriate forum for a dispute arising out of those agreements. (Defendants' Motion to Dismiss, Exhibit B, Stockholder Agreement, § 6.11(b)). This suggests that the parties did not expect, at the time the Merger Agreement was executed, that a dispute between Premiere and plaintiffs would be litigated in the Southern District of New York.

selection clause may waive a party's right to assert his own inconvenience as a reason to transfer a case, but district courts still must consider whether the 'interest[s] of justice' or the 'convenience of ... witnesses' require transferring a case.") (internal citations omitted). The forum selection clause does not specify New York as the *exclusive* forum. *See Savin,* 657 F.Supp. at 1215 ("forum selection clauses will be read as limiting venue to a single district only where the language of the clause explicitly mandates such exclusive venue"); *Credit Alliance,* 567 F.Supp. at 1465 (transferring the action despite a forum selection clause which "empower[ed] the New York courts to adjudicate this matter [but did not] indicate that New York [was] the exclusive or the only appropriate forum where the case may be heard.").

In *Savin,* Judge Walker concluded that although the forum selection clause specified New York, and although New York was the more convenient forum, other factors including the expertise of the transferee judge and the location of the sources of proof were enough to warrant a § 1404(a) transfer. *See* 657 F.Supp. at 1213–14. *See also Delaware Credit Corp. (U.S.A.) v. Aronoff,* No. 92 Civ. 135S, 1992 WL 170896 at *4–6 (W.D.N.Y. July 10, 1992) (transferring an action despite a valid forum selection clause partly because numerous related actions were pending in the transferee district). Similar factors—the existence of twenty-two related and now-consolidated actions and the location of Premiere's headquarters, documents, and employees in Atlanta, convince this Court that a transfer is appropriate in this action despite the existence of a forum selection clause in the Merger Agreement.

*III. Other Relevant Considerations*

The Court concludes that the convenience of the parties and witnesses, and the location of the sources of proof, suggests that venue in the Northern District of Georgia, where Premiere's headquarters is located, is appropriate. Among the advantages of the Northern District of Georgia are that (1) many defendants reside in Atlanta; (2) many Defendants and witnesses on behalf of defendants who do not reside in Atlanta often travel to Atlanta on business; (3) many witnesses who reside near or in New York will need to travel to Atlanta in order to testify in the Atlanta Action and their testimony and depositions may be scheduled accordingly; and (4) many of the documents that will be relevant in this case are in Premiere's office in Atlanta. (Def.Mem. at 14; Defendants' Motion to Transfer Exhibit 5.) *See Saltzberg v. TM Sterling/Austin Associates, Ltd.,* 746 F.Supp. 1225, 1227 (S.D.N.Y. 1990) (transferring action to Northern District of Georgia because of the "significant number of important witnesses" and majority of relevant documents located in transferee district.) Plaintiffs note that New York may be slightly more convenient to them in that (1) two plaintiffs reside in Connecticut, and one in New Jersey; and (2) this Court may have the ability to subpoena investment banks, legal advisors, and other non-party New York witnesses who would be beyond the subpoena power of the Northern District of Georgia. These considerations, while important, are not enough to overcome factors such as the convenience of Atlanta for so many individuals, the maintenance of key documents at Premiere's Atlanta headquarters, and the efficiency and fairness of trying all of the related actions against Premiere in one forum.

Contrary to plaintiffs' assertions, the location of the operative facts in this case does not require the case to be heard in New York. Because the Securities Act claims depend largely on statements issued by Defendants in the January Prospectus and other press releases, (*See* Complaint ¶¶ 15–16, 33, 68–70, 72) (mentioning press releases), these claims may be understood to have arisen, to some extent, in Atlanta, where Premiere's headquarters is located and the documents

were prepared. (Def.Mem. at 5.) (Affidavit of Patrick G. Jones ¶ 6.) *See Reliance Ins. Co. v. Associated Marjon,* No. Civ. A. HAR 90-880, 1990 WL 168798, *1 (D.Md. 1990) (considering the place where key documents were prepared to be relevant in a § 1404(a) motion). Although most of the merger negotiations occurred in New York, representatives from both groups traveled between New York and Atlanta on several occasions. (Affidavit of Robert M. Chefitz ¶ 3; Affidavit of Patrick G. Jones ¶ 3.)

In sum, the Court concludes that the interest of justice mandates that the Court transfer this action to the Northern District of Georgia. Twenty-two related actions have been filed and consolidated in the transferee district, and a transfer will avoid unnecessarily duplicitous litigation and the risk of inconsistent judgments. The forum selection clause in the Merger Agreement between Premiere and Xpedite may not apply to the parties in the current lawsuit, and its significance in this action is outweighed by the substantial advantages that will accrue to the parties and the courts by trying this action and the Consolidated Atlanta Action in the same forum.

## *CONCLUSION*

For the reasons stated, defendants' motion to transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) is GRANTED. The Court does not rule upon Defendants' motion to dismiss the action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), preserving the issue for the transferee court.

SO ORDERED.