Donald BILLING, Plaintiff,

v.

COMMERCE ONE, INC., as successor
to Appnet, Inc., Defendant.

No. 01 CIV 5734(RWS).

United States District Court,
S.D. New York.

Feb. 8, 2002.

Drohan & Drohan, New York, By Vivian R. Drohan, Esq., Of Counsel, for Plaintiff.

Seyfarth Shaw, New York, By Paul Galligan, Esq., Of Counsel, for Defendant.

Seyfarth Shaw, Washington, DC, By Christopher A. Weals, Esq., Emily R. Friedman, Esq., Of Counsel.

## OPINION

SWEET, District Judge.

Defendant Commerce One, Inc. ("Commerce") has moved pursuant to 28 U.S.C. § 1404(a) to transfer this action brought by plaintiff Donald Billing ("Billing") to the District of Maryland. For the reasons set forth below, the motion is granted.

This close question turns on Billing's choice of forum and his residence, which are not the same. Were it otherwise, the motion would have been denied.

### Prior Proceedings

This action was commenced on June 22, 2001. An amended complaint was the subject of a stipulation so ordered on October 16, 2001. It alleged fraudulent misrepresentations in connection with an employment contract between Billing and AppNet, Inc. in late 1999 and early 2000 and a breach of that contract for failing to provide stock options, reimbursements, medical benefits and an incentive bonus.[1]

1. In September 2000, Commerce acquired AppNet. Both names are used in this opinion depending on the time frame involved.

Commerce's motion to transfer was heard and marked fully submitted on November 7, 2001.

### Facts

The facts as alleged in the amended complaint are set forth below, together with facts undisputed by the parties.

AppNet was a consulting and business integration enterprise, specializing in electronic commerce software packages and Internet services. In the fall of 1999, an executive recruiter contacted Billing about a position at AppNet and he was invited to interview with AppNet. On December 8, 1999, Billing met with Toby Tobaccowalla ("Tobaccowalla"), AppNet's Chief Operating Officer, Gina Miller ("Miller"), AppNet's Director of Human Resources, John Berry ("Berry"), AppNet's Vice President of Marketing, Patricia Davis ("Davis"), AppNet's Vice President of Human Resources, and Mike Fumani ("Fumani"), AppNet's Vice President of Sales, at AppNet's corporate headquarters in Bethesda, Maryland.

On January 14, 2000, Billing met with Randy Wiele ("Wiele"), a Senior Vice President at AppNet, in New York City. Billing met Ken Bajaj ("Bajaj"), AppNet's CEO, on January 18, 2000 at the Bethesda headquarters. Bajaj allegedly made several false statements. Billing met on February 3, 2000, in Bethesda, with Jack Pearlstein ("Pearlstein"), AppNet's CFO, Wiele, and Carlos Figueroa ("Figueroa"), AppNet's Director of Business Integration. During these interviews, Pearlstein represented that AppNet did not permit change of control provisions in executive contracts and that AppNet was not considering an acquisition or merger.

Following telephone conversations between Billing and Miller, Wiele sent an offer letter to Billing which Billing subsequently signed and returned to the Bethesda office, dated February 15, 2000. On March 2, 2000, Billing reported to work in Bethesda and met with Sherry Rhodes ("Rhodes"), AppNet's General Counsel, sometime between March 1 and March 20, 2000 to discuss the terms of his employment.

Billing was hired for the Northeast region and was to operate the New York office. After he was discharged, he sought to arbitrate his claim in Maryland.

### Transfer is Appropriate

Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

At the time this action was brought, the United States District Court for the District of Maryland had personal jurisdiction over Commerce and venue before that court was proper. Maryland has a long-arm statute that purports to grant jurisdiction over Commerce, a Delaware corporation, with offices in Maryland. In pertinent part, that statute provides, "[a] court may exercise personal jurisdiction over a person who directly or by an agent (1) transacts any business or performs any character of work or services in the State ...." Md. Ann.Code § 6–103(b)(2000). *See also Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 236 (D.Md.1992), *aff'd*, 991 F.2d 1195 (4th Cir.1993).

In this case, Commerce transacts business in Maryland by maintaining offices or facilities in Columbia and Laurel, Maryland, and by selling, marketing, and supporting its products out of the Maryland offices.[2] Additionally, the disputed negotiations took place at the Bethesda, Maryland office, between Billing and employees of that office.

---

**2.** The Bethesda office was closed in September 2001, after the filing of this suit.

Commerce also has minimum contacts with the District of Maryland, the action is related to those contacts, and the exercise of jurisdiction is otherwise reasonable. *See Nichols,* 783 F.Supp. at 241. *See also Choice Hotels Int'l, Inc. v. Madison Three, Inc.,* 23 F.Supp.2d 617 (D.Md.1998).

Venue must be proper in the district to which transfer is sought. In diversity cases, such as this one, venue is governed by 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, by brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Maryland constitutes one judicial district. *See* 28 U.S.C. § 100. Many of the acts and omissions occurred within Maryland and therefore fall within the judicial district of the United States District Court for the District of Maryland.

### For the Convenience of the Parties and in the Interests of Justice this Case Should be Transferred to the United States District Court for the District of Maryland

■ The remaining issue is whether a transfer would be more convenient for the parties and witnesses and whether such transfer would promote the interests of justice.

### This Court Weighs Several Factors in Assessing Whether It Should Transfer Venue

In deciding whether a case should be transferred, this Court recently stated that it will weigh several factors, including:

> (1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence, including documents; (7) the relative familiarity of the courts with the applicable law; (8) the interests of justice, including the interests of trial efficiency.

*Smart v. Goord,* 21 F.Supp.2d 309, 315 (S.D.N.Y.1998).

### Choice of Forum

Billing is a New Jersey resident, so New York is not his "home turf." *See ZPC 2000, Inc. v. SCA Group, Inc.,* 86 F.Supp.2d 274, 280 (S.D.N.Y.2000) ("[P]laintiff brought the suit initially outside its home forum .... As a result, plaintiff's choice of forum is entitled to little deference."); *see also Coker v. Bank of Am.,* 984 F.Supp. 757, 766 (S.D.N.Y. 1997) (Plaintiff's "choice of the New York forum also is entitled to lesser weight because [plaintiff] has chosen a forum that is not his residence."). *In re Nematron Corp. v. Sec. Litig.,* 30 F.Supp.2d 397, 400–03 (S.D.N.Y.1998).

### Operative Facts

■ "The location of the operative events is a 'primary factor' in determining a § 1404(a) motion to transfer." *ZPC 2000, Inc.,* 86 F.Supp.2d at 279 (*citing Smart,* 21 F.Supp.2d at 316). "Courts routinely transfer cases where the principal events occurred, and the principal witnesses are located in another district." *Totonelly v. Cardiology Assocs. of Corpus*

*Christi, Inc.,* 932 F.Supp. 621, 623 (S.D.N.Y.1996) (internal quotations omitted).

Billing has alleged that oral statements made during and after the interview process led him to believe in the existence of a contract of employment; that terms of this alleged contract that were negotiated during these meetings were subsequently breached; that during the employment negotiations, and specifically at the time of his interviews in January and February of 2000, he was fraudulently reassured about the business status of the company; and that during the interview process and negotiations, he was misled as to the financial status of the company and as to the execution of a contract of employment.

The statements underlying the contract and fraud claims allegedly took place during interviews and negotiations that were held in AppNet's Bethesda, Maryland office. Additionally, the terms and conditions of Billing's alleged employment contract were negotiated in person or telephonically with AppNet representatives in the Bethesda office.

In *Praxair, Inc. v. Morrison Knudsen Corp.,* No. 00 Civ. 0892E (SC), 2001 WL 118585, at *4 (W.D.N.Y. Feb.6, 2001), the court found that negotiations that took place in New York were not relevant because the main cause of action raised in the complaint was a breach of contract action arising from the defendant's mismanagement of a construction project. Accordingly, the locus of operative facts was where the contract was performed, not where it was proposed and negotiated. *Id.* Similarly, in *Westwood Ventures, Ltd. v. Forum Financial Group,* No. 97 Civ. 514(WK) 1997 WL 266970, at *4 (S.D.N.Y. May 15, 1997), a lawsuit involving fraud, breach of contract, and negligence in the formation and performance of certain agreements, the court disregarded two meetings in New York between the parties involving issues that arose after the expiration of the agreements at issue. The two meetings, the court reasoned, did not establish a sufficient nexus between New York and the underlying litigation. *Id.* The fact that one interview took place in New York is not sufficient to defeat a motion to transfer. *See St. Regis Mohawk Tribe v. Cuomo,* 774 F.Supp. 185, 189 (S.D.N.Y.1991).

### Convenience of the Parties

AppNet has maintained its principal office in Bethesda, Maryland. Commerce has an office in New York, but that office did not have an active role in the subject negotiations, and none of Commerce's witnesses worked in that office. Billing resides in New Jersey.

### Convenience of Witnesses

■ "The convenience of the witnesses is an important consideration in the determination of venue." *Smart,* 21 F.Supp.2d at 316 (*citing In re Eastern Dist. Repetitive Stress Injury Litig.,* 850 F.Supp. 188, 194 (E.D.N.Y.1994)). Commerce has identified as witnesses, Wiele, Pearlstein, Miller, Bajaj, Tobaccowala, Rhodes, and Dawson. Five out of seven of these witnesses live and work in the greater Washington, DC area, all within a fifty-mile radius from the United States District court for the District of Maryland, sitting in Greenbelt, Maryland.

### The Attendance of Witnesses

■ "The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Electronics v. Ducommun, Inc.,* 724 F.Supp. 264, 266 (S.D.N.Y.1989) (citation omitted). Rule 45 of the Federal Rules of Civil Procedure provides the district courts limited enforcement rights concerning subpoenas. Under that rule, a district court can enforce a trial subpoena served on a witness within the judicial

district of the court, or within 100 miles of the court. *See* Fed.R.Civ.P. 45(b)(2) & (e). Several non-party witnesses reside in the Bethesda area. Accordingly, to the extent these third-party witnesses are not willing to testify, the United States District Court for the District of Maryland could compel their presence at trial.

### Physical Evidence

Notes or records of the interviews, to the extent they exist, would likely be in Maryland.

### Familiarity with Applicable Law

It is assumed that the federal courts in both this district and the District of Maryland are equally familiar with the legal principles necessary to resolve this case.

Accordingly, this factor does not weigh in favor of either party.

### Interests of Justice

The final factor, trial efficiency and the interests of justice, favors transfer. The dockets of the competing districts are relevant to this inquiry. *Praxair*, 2001 WL 118585, at *5.

The Administrative Office of the United States Courts compiles a host of data concerning cases filed in the U.S. courts. For the twelve month period ending September 30, 2000, that office has provided the following data concerning the United States District Court for the Southern District of New York and the United States District Court for the District of Maryland:

|  | Total Civil Cases Pending | Number of Cases Pending Three years or More |
|---|---|---|
| Southern District of New York | 11,599 | 1,098 |
| District of Maryland | 2,496 | 67 |

Leonidas Ralph Mecham, *Judicial Business of the United States Courts, 2000 Annual Report of the Director*, at 129, 168, and the length of time this comparatively simple motion has been pending underscores these statistics.

### Conclusion

On balance, the above factors including Billing's effort to arbitrate in Maryland favor transfer. Were Billing a New York resident, in this near equipoise, his choice of forum would control, but he is not.

The motion is therefore granted.

It is so ordered.