**OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS OF G–I HOLDING, INC., Plaintiff,**

v.

**Samuel J. HEYMAN, Defendant.**

**No. 01 Civ. 8539(RWS).**

United States District Court,
S.D. New York.

March 19, 2004.

*OPINION*

SWEET, District Judge.

Defendant Samuel Heyman ("Heyman") has moved pursuant to 28 U.S.C. § 1412, or in the alternative, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the District of New Jersey. For the reasons set forth below, the motion is denied.

### *Parties*

Plaintiff, the Official Committee of Asbestos Claimants of G–I Holdings, Inc. (the "Committee"), is a creditors committee appointed by the United States Trustee pursuant to 11 U.S.C. § 1102(a). The Committee is made up of persons who assert claims against G–I, as successor to GAF Corporation ("GAF"), by reason of personal injuries or wrongful death caused by asbestos-containing products.

Heyman is the former chairman and chief executive officer of GAF and is a citizen of the State of New York.

### *Prior Proceedings and Background*

The facts discussed herein are discussed in greater detail in *Official Committee of Asbestos Claimants of G–I Holding, Inc. v. Heyman*, 01 Civ. 8539, 2003 WL 22790916 (S.D.N.Y. Nov. 25, 2003) (*"Heyman II"*) and *Official Committee of Asbestos Claimants of G–I Holding, Inc. v. Heyman*, 277 B.R. 20 (S.D.N.Y.2002) (*"Heyman I"*), familiarity with which is presumed.

This action, brought pursuant to 11 U.S.C. §§ 544(b) and 550(a) of the Bankruptcy Code, arises out of the Chapter 11 reorganization proceeding of G–I Holdings, Inc. ("G–I") currently pending in the District of New Jersey, seeks to set aside an allegedly fraudulent transfer and to recover for breaches of fiduciary duty. G–I filed for bankruptcy on January 5, 2001, as a result of a flood of personal injury and wrongful death claims.

Caplin & Drysdale, Chartered, by Elihu Inselbuch, Rita C. Tobin, of counsel, New York, NY, Caplin & Drysdale, Chartered, by Trevor W. Swett, Nathan D. Finch, Max C. Heerman, of counsel, Washington, DC, for Plaintiff.

Simpson Thacher & Bartlett, by Barry R. Ostrager, Mark Thompson, David J. Woll, of counsel, New York, NY, for defendant.

As of December 31, 1996, GAF was the top-tier holding company in a corporate group that contained two principal operating businesses: (1) ISP, a manufacturer of specialty chemicals and mineral products; and (2) Building Materials Corporation of America ("BMCA"), a manufacturer of roofing and building products. GAF was a privately held company at the time. It later merged with G–I.

The transactions challenged in this action took place in January 1997, when GAF owned 100% of a company named ISP Holding, Inc. ("ISPH"), which in turn owned approximately 83.5% of the ISP stock. The remaining ISP stock was publicly held.

With effect as of January 1, 1997, GAF distributed to GAF's shareholders, for no consideration, 100% of the capital stock of ISPH (the transaction will be referred to as the "ISP Spinoff"). Heyman received approximately 96% of the shares, and the minority shareholders of GAF received the remaining 4%. At ISP's closing price on December 31, 1996, the stock that GAF disposed of in the transfer was worth about $1 billion, $988,391,250 of which Heyman received directly or indirectly.

Before G–I filed for bankruptcy, individual creditors filed three different fraudulent transfer suits against Heyman in New York based on the spin-off of ISP. Two of these, *Nettles v. Heyman*, No. 00 Civ. 0035, filed January 3, 2000 and *Stewart v. Heyman*, filed on December 26, 2000, were filed by asbestos claimants in the Southern District of New York.[1] The third predecessor action, was filed in the Supreme Court for the County of New York on September 18, 2000 by the Center for Claims Resolution, Inc. ("CCR"), a consortium of asbestos defendants of which GAF was a former member. *CCR v. Heyman*, Index No. 604002/2000 (Sup.Ct.N.Y.County).

Heyman moved to dismiss the Committee's complaint on December 13, 2001. This Court denied the motion on April 8, 2002. *See Heyman I.* The Legal Representative of Present and Future Holders of Asbestos–Related Demands (the "Legal Representative") was granted leave to intervene pursuant to Fed.R.Civ.P. 24 on November 25, 2003. *See Heyman II.*

The Committee is simultaneously litigating another proceeding pending before the Honorable William G. Bassler in the District of New Jersey that also grows out of the G–I bankruptcy. In the action, styled *G–I Holdings, Inc. v. Bennett*, Civ. No. 02–2626(WGB) (D.N.J.) (filed Feb. 7, 2001) (the "BMCA Action"), G–I seeks a declaratory judgment that BMCA, its indirect subsidiary and sole operating company, has no liability for asbestos claims under any theory of successor liability or alter ego. Joined as defendants were seven individuals who had brought suit against BMCA in state court on theories of successor liability and alter ego.

The Committee moved on September 28, 2001 to intervene as a defendant and a counterclaimant. In October 2002, the Bank of New York intervened as a defendant to the Committee's counterclaims. The Bank of New York is participating in the BMCA Action in a dual capacity, as a member and agent of a bank consortium that made $210 million in revolving credit facilities available to BMCA, and as indenture trustee for holders of approximately $560 million of notes publicly issued by BMCA. Of the several parties to the

---

1. The complaint in *Stewart* was never served because an automatic stay of bankruptcy supervened, preventing service of process. However, the case remains pending. *Nettles* has been administratively dismissed with leave to file at the conclusion of G–I's bankruptcy.

BMCA Action, only the Committee is presently a party in the instant case.

The Committee's counterclaims in the BMCA Action arise from a series of restructurings and financial transactions carried out between 1983, when Heyman acquired control of GAF as a conglomerate operating a chemicals business and a roofing business, and 2001, when G–I filed for bankruptcy. The focus of the litigation, according to the Committee, is a 1994 transaction in which GAF's roofing subsidiary, which had assumed responsibility for 100% of GAF's asbestos liability, created BMCA as its own subsidiary and transferred to it substantially all of the assets of the roofing business in exchange for BMCA's promise to pay a percentage of the asbestos liabilities. This transaction purported to structurally subordinate the asbestos claimants in favor of the financial creditors of BMCA. The BMCA Action also concerns a transaction executed in December 2000, two weeks before G–I filed for bankruptcy, in which BMCA was refinanced on a basis that resulted in BMCA's banks and noteholders receiving first and second liens, respectively, on all of its assets, which until then had been free of encumbrances.

According to the Committee, its goal in the BMCA Action is to establish that BMCA bore liability for the asbestos claims so that the refinancing may be challenged on behalf of the asbestos victims.

On May 13, 2003, Judge Bassler withdrew the reference of the BMCA Action from the bankruptcy court. *See G–I Holdings, Inc. v. Bennett,* 295 B.R. 211 (D.N.J. 2003). A scheduling order was issued in July 2003 under which discovery was slated to close on December 15, 2003. Written discovery has been ongoing since April 2002.

In the instant case, Heyman filed his motion to transfer on September 19, 2003.

After submission of briefs, the motion was deemed fully submitted on October 15, 2003.

### Discussion

■ A fraudulent conveyance action brought pursuant to 11 U.S.C. § 544(b) is a core proceeding under 28 U.S.C. § 157(b)(2)(H) ("Core proceedings include . . . proceedings to determine, avoid, or recover fraudulent conveyances."). "Where a party seeks to transfer venue for a core proceeding, the applicable statute is 28 U.S.C. § 1412." *In re Iridium Operating LLC,* 285 B.R. 822, 835 (S.D.N.Y.2002). Under this section, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Such "motions are within the discretionary authority of the district courts, according to 'an individualized, case-by-case consideration of convenience and fairness.'" *In re Manville Forest Prods. Corp.,* 896 F.2d 1384, 1391 (2d Cir.1990) (*quoting Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). However, "the party moving for a change of venue bears the burden of proof and that burden must be carried by a preponderance of evidence." *Id.* at 1390.

■ In determining whether to grant a motion for transfer under § 1412, courts consider substantially the same factors as for a motion to transfer under 28 U.S.C. § 1404(a). *See In re McCrory Corp.,* 160 B.R. 502, 507 n. 2 (S.D.N.Y.1993) ("The standards for § 1412 are essentially the same as those for § 1404(a)."); *see also Alliance Communications Group, Inc. v. Northern Telecom, Inc.,* 65 B.R. 581, 585 (S.D.N.Y.1986) (same). Those factors include:

(1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the

convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of court with the applicable law; and (8) the interests of justice, including the interests of trial efficiency.

*Goggins v. Alliance Capital Management, L.P.,* 279 F.Supp.2d 228, 232 (S.D.N.Y. 2003) (*quoting Billing v. Commerce One, Inc.,* 186 F.Supp.2d 375, 377 (S.D.N.Y. 2002)). Further, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *In re Manville,* 896 F.2d at 1391. However, in this case, that presumption is at odds with the "strong presumption in favor of the plaintiff's choice of forum." *VictoriaTea.com, Inc. v. Cott Beverages, Canada,* 239 F.Supp.2d 377, 381 (S.D.N.Y.2003) (*citing Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 28 (2d Cir.2002)); *see also Luciano v. Maggio,* 139 B.R. 572, 577 (E.D.N.Y.1992) (noting "presumption in favor of plaintiff's choice of forum" in the context of a motion pursuant to § 1412). The two presumptions effectively cancel each other out, and the motion will accordingly be decided on the basis of the remaining factors.

■ The Committee argues that the locus of operative facts and the location of documents favor retaining the action in New York. This court has previously noted that "Heyman is a New York resident and some of the injury took place in New York." *Heyman I,* 277 B.R. at 35 n. 10. The Committee maintains that the transaction challenged in this case was planned and carried out by executives and valuation experts who maintain offices in New York. Heyman has not contested this characterization. Further, because the financial institutions that participated in the ISP spin-off, such as Bear Stearns and Houlihan Lokey, are located in New York, much of the relevant documentation will be found there.

G–I counters that there are also substantial connections to New Jersey. GAF was, and G–I is, headquartered in New Jersey, and hence that many of the documents that have been and will be produced to the Committee will originate from New Jersey.

Because of the close proximity of New York and New Jersey, and in particular of Manhattan and Newark, the location of documents favors neither party. The same can be said with respect to factors relating to the convenience of parties and witnesses, as well as the availability of service of process.[2] However, the fact that "[t]he primary operative facts underlying this action" occurred in Manhattan is significant, *see Pinto v. Doskocil,* 91 Civ. 1518, 1991 WL 207523, at *8 (S.D.N.Y. Oct. 3, 1991), and this factor, accordingly, weighs against transfer.

The factor relating to the forum's familiarity with the applicable law favors neither party, as "[i]t is assumed that the

---

**2.** Heyman has argued that the convenience of witnesses is furthered by transfer, because duplicative depositions would thereby be avoided. In addition to the fact that this action and the BMCA Action would not necessarily be consolidated, the avoidance of duplicative discovery is properly addressed under the last factor, which addresses questions of trial efficiency. The "convenience of witnesses" factor addresses how far the witnesses will have to travel in order to participate in the litigation. *See In re Nematron Corp. Sec. Litig.,* 30 F.Supp.2d 397, 400–01 (S.D.N.Y.1998) (considering where "the majority of the key witnesses ... reside" under this factor).

federal courts in both this district and the District of [New Jersey] are equally familiar with the legal principles necessary to resolve this case." *Commerce One*, 186 F.Supp.2d at 379.

■ "Beyond these particular concerns, a district court has discretion to transfer an action to where the trial would best be expedient and just." *Goggins*, 279 F.Supp.2d at 234 (*quoting Nematron*, 30 F.Supp.2d at 407). The critical factor in this case is the alleged relatedness of this action to the BMCA Action. Heyman argues that because the BMCA Action will also address issues concerning the genesis of, reasons for and circumstances surrounding the ISP spin-off, that the two actions should be in the same district so that discovery and other proceedings may be coordinated.

The Second Circuit has held that "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Id.* (*quoting Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968)); *see also APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 49 F.Supp.2d 664, 668 (S.D.N.Y.1999) ("It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer.") (citing cases).

The Committee argues that this action and the BMCA Action are not related claims for purposes of the motion to transfer. In addition, the Committee points to *G–I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216, currently pending before this Court, as a case with even greater relation to this litigation than the BMCA Action. Because it is found that the BMCA Action is insufficiently related to this action to warrant transfer, the comparative relatedness of the *Baron & Budd* litigation will not be considered.

■ In considering whether two actions are sufficiently similar to justify transfer, "[t]he issue is not whether identical causes of action have been pled in the two actions but whether they hinge upon the same factual nuclei." *APA Excelsior*, 49 F.Supp.2d at 669 (*quoting Dahl v. HEM Pharm. Corp.*, 867 F.Supp. 194, 197 (S.D.N.Y.1994)) (internal quotations omitted). In *APA Excelsior*, the court found the two actions similar enough to warrant transfer because the plaintiffs had "allege[d] an important subset of the claims asserted in the [action in the transferee court], with substantial overlap, and with minor additions ..." *Id.* at 670.

While the ISP Spin-off plays a role in both this action and in the BMCA Action, and while at least four witnesses who were scheduled to be deposed in the BMCA Action will also be deposed in this action, there is not a "substantial overlap" between the claims asserted in the two actions, nor do the cases "hinge upon the same factual nuclei." The complaint filed by G–I in the BMCA Action makes no reference to the ISP Spin-off, or any other financial transaction, and is strictly concerned with the issue of successor and alter ego liability. *See* Swett Declaration, Exh. 12. The counterclaims made by the Committee also make no mention of the ISP Spin-off, and are instead concerned with the 1994 transaction in which BMCA was created, and the 2000 transaction in which G–I refinanced BMCA. *See id.*, Exh. 13. Those transactions are the factual nuclei of the BMCA Action. Inevitably, the ISP Spin-off will be considered by the parties and by the court in the course of the litigation. According to the Commit-

tee, it will seek in the BMCA Action "to discover whether ISP devoted resources before or after the Spin-off to propping up this ... structure and to evaluate the impact of the ISP Spin–Off on the ability of its former affiliates to indemnify BMCA." Pl.'s Mem. at 21. But that consideration is insufficient to render the BMCA Action a related action for purposes of justifying transfer.

Heyman has also argued that the failure to transfer this case would create "an unfair and untenable situation for Mr. Heyman, who is entitled to have his counsel fully participate in [the BMCA] litigation that directly affects his rights." Def.'s Mem. at 3. However, as the Committee points out, transfer of this case to the District of New Jersey would not necessarily result in consolidation nor assure that Heyman could intervene in the litigation. It is, however, within Heyman's rights to move to intervene in the BMCA Action, a step that would not require transfer of this action.

Heyman also seeks the coordination of discovery in the two cases, if discovery remains open in the BMCA Action. Prior to the filing of this motion, the parties had apparently already discussed the possibility of coordinating depositions in the two actions, in order to avoid overlap. Much of the efficiency to be gained from a coordination of discovery tasks can be effected by the conduct of the parties, without the need for a transfer.

Each relevant factor, therefore, weighs against transfer. Most importantly, the two actions are not sufficiently related to realize significant gains in judicial efficiency. Although rulings on some similar discovery issues is to be expected in both actions, the risk of inconsistent rulings is not significant.

### Conclusion

For the reasons set forth above, Heyman's motion to transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1412 or 28 U.S.C. § 1404(a) is denied.

It is so ordered.